**AFFIRM; and Opinion Filed November 18, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00692-CV

**BEAL BANK, Appellant**

**V.**

**WARREN A. GILBERT, JR. AND PATTIE PITTMAN GILBERT, INDIVIDUALLY AND AS THE TRUSTEE OF THE PATTIE PITTMAN GILBERT SEPARATE PROPERTY TRUST, Appellees**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-00184**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Fillmore

Beal Bank appeals the trial court's grant of summary judgment in favor of Warren A.

Gilbert, Jr. (Warren)[1] and Pattie Pittman Gilbert, Individually and as the Trustee of the Pattie

Pittman Gilbert Separate Property Trust, and denial of summary judgment in favor of Beal Bank.

We affirm the trial court's judgment.

### Background

Pattie Pittman Gilbert (Pattie) and Warren were married in 1959 and had one child.[2] In

1981, Pattie inherited property from her parents that included assets in an investment account in

---

[1] To avoid confusion, we will refer to the Gilberts by their first names.

[2] Warren had two other children.

Louisiana (the investment account). In 1990, Pattie received an inheritance from her uncle that also included assets in an investment account in Louisiana. Pattie transferred the assets in the account that she inherited from her uncle into the investment account.

According to Pattie, the investment account "never contained anything other than cash, securities or mutual funds which [she] acquired through inheritance" from her parents and her uncle. Pattie denied she ever "deposited money or placed securities into the account which were purchased or acquired" by her or Warren during their marriage. Warren affirmed the investment account was maintained, controlled, and managed solely by Pattie and denied that he ever made a contribution to the account. Both Pattie and Warren denied that Warren had any control over the account.

In 1993, Pattie created the Pattie Pittman Gilbert Separate Property Trust (the Trust) for the benefit of the Gilberts' daughter. Pattie funded the trust with the entire balance of the investment account. Attached to the Trust document is a statement for the investment account for the period from June 26, 1993 through July 30, 1993 that shows interest and dividends were credited to the account.

On April 1, 1994, Pattie and Warren entered into a post-nuptial agreement. The agreement was intended to "define the rights of each [party] in their community property and in the separate properties of each other." Section 2.01 of the agreement states that it was Pattie's and Warren's intent that:

> (a) each party will own and manage his or her separate property; (b) all income from and increases in kind or in value of such separate property will be the separate property of the party who owns such property; (c) all income from and increases in kind or in value of such separate property will be subject to the sole management and control of the party who owns such property; and (d) the separate estate of each party will bear all of that party's separate obligations and separate liabilities presently existing or hereafter undertaken or arising.

Exhibits to the post-nuptial agreement listed Pattie and Warren's community property, Warren's separate property, Pattie's separate property, Warren's debts, and Pattie's debts. Pattie's separate property included the assets in the Trust. A statement for the investment account for the period from January 1, 1994 through January 28, 1994 is attached to the post-nuptial agreement and shows that interest and dividends had been credited to the account.

In October 1994, Beal Bank obtained a judgment against Warren based on a default on a note (the Judgment). In 2008, Beal Bank sued Pattie, both individually and as trustee of the Trust, and Warren seeking declaratory relief and to set aside as a fraudulent conveyance the transfer of the assets from the investment account to the Trust.

Beal Bank filed a combined traditional and no-evidence motion for partial summary judgment. Beal Bank moved for a traditional summary judgment on grounds it was entitled to a declaration that (1) the debt evidenced by the Judgment is a community property debt of the Gilberts; (2) at the time of the creation of the Trust, the assets in the investment account were presumed to be the Gilberts' community property; (3) interest and dividends in the investment account prior to the creation of the Trust were community property; and (4) to the extent the assets in the investment account prior to the creation of the Trust included any separate property, that separate property has been commingled with the Gilberts' community property so as to lose its character as separate property. Beal Bank sought a no-evidence motion for summary judgment on grounds that Pattie is unable to establish by clear and convincing evidence the separate property character of the assets in the investment account or of some or all of the assets in the Trust.

Both Pattie and Warren responded to Beal Bank's motion for partial summary judgment. Pattie filed a cross-motion for summary judgment on grounds the assets in the investment account and in the Trust had always been either her separate property or her sole management

community property. Pattie further asserted that, because these assets had never been subject to execution to satisfy Beal Bank's judgment against Warren, there had not been a transfer of "property of the debtor" necessary to establish a fraudulent conveyance.

The trial court granted Pattie's motion for summary judgment and denied Beal Bank's motion for partial summary judgment and ordered that Beal Bank take nothing on its claims. Beal Bank appealed. We dismissed the appeal for want of jurisdiction because the trial court's order did not dispose of Beal Bank's claims against Warren. *See Beal Bank, S.S.B. v. Gilbert*, No. 05-09-00504-CV, 2010 WL 1744626, at *1 (Tex. App.—Dallas Apr. 30, 2010, no pet.) (mem. op.). Warren then filed a motion for summary judgment adopting the "pleadings, affidavits, evidence, argument, and authorities" of Pattie's motion for summary judgment along with his "supportive pleadings." Beal Bank responded to Warren's motion by adopting its response to Pattie's motion for summary judgment. The trial court granted Warren's motion for summary judgment and ordered that Beal Bank take nothing on its claims.

**Standard of Review**

We review the grant of summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgment are well known. *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i); *Gish*, 286 S.W.3d at 310. To defeat a no-evidence summary judgment, the nonmovant is required to

produce evidence that raises a genuine issue of material fact on each challenged element of its claim. *Gish*, 286 S.W.3d at 310*; see also* TEX. R. CIV. P. 166a(i).

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310. When both parties move for summary judgment and the trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we may render the judgment that the trial court should have rendered. *Fielding*, 289 S.W.3d at 848.

**Analysis**

In its first issue, Beal Bank asserts the trial court erred by granting Pattie's and Warren's motions for summary judgment because (1) the claim the Trust assets are Pattie's sole management community property negated neither the declaratory relief sought by Beal Bank nor the relief requested on the basis of a fraudulent conveyance; (2) the property in the Trust was not Pattie's sole management community property because the post-nuptial agreement vitiated any sole management community property; (3) the transfer of assets to the Trust is void as a fraudulent conveyance; and (4) the Gilberts did not move for summary judgment on all of Beal's claims. In its second issue, Beal Bank argues the trial court erred by denying its motion for partial summary judgment because it established it was entitled to declarations that the assets in the investment account were community property and the Judgment was a community debt.

Generally, whether property is separate or community is determined by its character at inception. *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001); *Magness v. Magness*, 241

S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied). Separate property includes property acquired by a spouse during marriage by gift, devise, or descent. TEX. CONST. art. XVI, §15; TEX. FAM. CODE ANN. § 3.001 (West 2006). Community property is property, other than separate property, acquired by either spouse during marriage. *Id.* § 3.002. It is presumed that property possessed by either spouse during marriage is community property. *Id.* § 3.003(a); *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam). A party claiming certain property as separate property has the burden of rebutting the presumption of community property by clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b); *Pearson*, 332 S.W.3d at 363. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. §§ 1.001(b) (West Supp. 2013), 101.007 (West 2008).

To overcome the community presumption, the spouse claiming certain property as separate has the burden of tracing and clearly identifying the property claimed to be separate. *Pearson*, 332 S.W.3d at 363 (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)). Tracing involves establishing the separate origin of the property through evidence proving the time and means by which the spouse originally obtained possession of the property. *Moroch v. Collins*, 174 S.W.3d 849, 856–57 (Tex. App.—Dallas 2005, pet. denied). If separate and community property have been so commingled as to defy resegregation and identification, it is presumed to be community property. *McKinley*, 496 S.W.2d at 543; *Nalbach v. Nalbach*, No. 04-11-00802-CV, 2013 WL 1641478, at *2 (Tex. App.—San Antonio Apr. 17, 2013, no pet.) (mem. op.). However, a showing of community and separate funds existing in the same account does not divest the separate funds of their identity and establish the entire amount as community, if the separate funds may be traced. *Holloway v. Holloway*, 671 S.W.2d 51, 60 (Tex. App.—Dallas 1983, writ dism'd).

Texas recognizes both sole and joint management community property. TEX. FAM. CODE ANN. § 3.102 (West 2006); *Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999). Sole management community property is that property which, though acquired during the marriage, would have belonged to a spouse if single. *Douglas*, 987 S.W.2d at 883; *see also* TEX. FAM. CODE ANN. § 3.102(a). Sole management community property includes (1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition. TEX. FAM. CODE ANN. § 3.102 (a). Marital property subject to the sole management, control, and disposition of one spouse is not subject to any non-tortious liability of the other spouse. TEX. FAM. CODE ANN. § 3.202(b)(2) (West Supp. 2013); *Moss v. Gibbs*, 370 S.W.2d 452, 455 (Tex. 1963); *Viera v. Viera*, 331 S.W.3d 195, 205 n.10 (Tex. App.—El Paso 2011, no pet.).

In this case, the undisputed evidence established the original source of the assets in the investment account was a devise to Pattie from her parents and from her uncle. Accordingly, the property in the investment account, when acquired by Pattie, was Pattie's separate property. *See* TEX. CONST. art. XVI, §15; TEX. FAM. CODE ANN. § 3.001. Beal Bank argues that dividends and interest credited to the investment account were community property and this community property was mingled with the separate property to the extent that the entire account became community property.[3] However, to the extent that, prior to the creation of the Trust, any interest or dividends paid on Pattie's separate property in the investment account was community property, it was Pattie's sole management community property and was not subject to execution

---

[3] Beal Bank also asserts, in its reply brief, that a $75,000 deposit into the investment account in 1993 raised an issue of fact regarding whether community property had been deposited in the account. We first note that Beal Bank cannot raise a new issue on appeal in its reply brief. *See Stovall v. Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 803 (Tex. App.—Dallas, no pet.). Further, Beal Bank did not argue in either its response to Pattie's or to Warren's motion for summary judgment that the $75,000 deposit created a fact issue as to the characterization of the property in the investment account. *See FIA Card Servs. v. Vater*, No. 02-09-00109-CV, 2010 WL 395195, at *3 (Tex. App.—Fort Worth Feb. 4, 2010, no pet.) (mem. op.) (appellant waived argument not made in trial court in response to motion for summary judgment).

to pay Warren's non-tortious liabilities. *See id.* §3.202. Accordingly, prior to the creation of the Trust, none of the assets in the investment account were available for execution to satisfy the Judgment and any commingling of the assets did not allow Beal Bank to execute on the investment account to satisfy the Judgment.

Beal Bank next argues that, as pertaining to it, the transfer of the assets in the investment account to the Trust is void as a fraudulent conveyance. A fraudulent conveyance is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976). The Texas Uniform Fraudulent Transfer Act (TUFTA) creates a statutory cause of action through which a creditor may seek recourse against a fraudulent conveyance. *See* TEX. BUS. & COM. CODE ANN. § 24.001–.013 (West 2009 & Supp. 2013)[4]; *Connell v. Connell*, 889 S.W.2d 534, 542 (Tex. App.—San Antonio 1994, writ denied). Under the TUFTA, a "debtor" is a person who is liable on a claim. TEX. BUS. & COM. CODE ANN. § 24.002(6) (West 2009). A "creditor" is a person who has a claim. *Id.* § 24.002(4). A "claim" means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *Id.* § 24.002(3).

The Judgment was against Warren only and was based on a non-tortious liability. Beal Bank did not have a right to payment from Pattie's separate property or sole management community property. *See* TEX. FAM. CODE ANN. § 3.202(a), (b)(2). Accordingly, Pattie was not a debtor as defined by the TUFTA, and Beal Bank was not a creditor as to Pattie. Therefore, the transfer of Pattie's separate and sole management community property to the Trust was not a fraudulent conveyance under the TUFTA as to Beal Bank. *See Martinek Grain & Bins, Inc. v.*

---

[4] We recognize the TUFTA was amended effective September 1, 1993 and effective September 1, 2013. *See* Act of May 29, 1993, 73rd Leg., R.S., ch. 570, §§ 8–12, 1993 Tex. Gen. Laws 2098, 2141–43; Act of Apr. 18, 2013, 83rd Leg., R.S., ch. 9, § 11, 2013 Tex. Gen. Laws 10, 12. Because the amendments do not affect our analysis, we cite to the current statute for convenience.

*Bulldog Farms, Inc.*, 366 S.W.3d 800, 806 (Tex. App.—Dallas 2012, no pet.) (transfer to a trust of homestead property that was "generally exempt under nonbankruptcy law" was not a violation of the TUFTA); *White v. White*, 519 S.W.2d 689, 693 (Tex. Civ. App.—San Antonio 1975, no writ) (concluding that where there is no creditor, there is no fraud).

Beal Bank next asserts the trial court erred by granting Pattie's and Warren's motions for summary judgment because, without distinguishing between sole management community property and joint management community property, the post-nuptial agreement gave Warren the contractual right to have his liabilities paid from community property. In support of this argument, Beal Bank specifically relies on section 2.01 and 3.04 of the post-nuptial agreement. Section 2.01 of the agreement provides, in relevant part, that it was Pattie's and Warren's "general purpose, intent, desire and agreement" that:

(a)  each party will own and manage his or her separate property;

(b) all income from and increases in kind or in value of such separate property will be the separate property of the party who owns such property;

(c) all income from and increases in kind or in value of such separate property will be subject to the sole management and control of the party who owns such property; and

(d) the separate estate of each party will bear all of that party's separate obligations and separate liabilities presently existing or hereafter undertaken or arising.

The community estate will bear all community obligations and community liabilities presently existing or hereafter undertaken or arising.

Section 3.04 of the post-nuptial agreement states that the community debts described on Exhibit "F" to the post-nuptial agreement "are the community obligations of both the Husband and Wife, to be satisfied and paid out of the community estate of the Husband and Wife." Although there is not an Exhibit "F" attached to any copy of the post-nuptial agreement included in the appellate record, Beal Bank asserts these two provisions in the post-nuptial agreement gave Warren the

contractual right to require Pattie to pay community debts, including the Judgment, out of community property in Pattie's possession and that Beal Bank was an intended beneficiary of this right.

Exhibit "C" to the post-nuptial agreement, however, identified "all assets" of the Trust as Pattie's separate property. These assets included any sole management community property transferred by Pattie to the Trust. Section 8.01 of the post-nuptial agreement also provides, in relevant part, that:

> If and to the extent that the parties have any property that is or might possibly be designated as their community property and that has arisen as income from or increases in kind or in value of the separate property or labor of either or both of the parties, then
>
>> a. the parties desire to partition such community property, including any other community property which may be included in the property which is described on Exhibits "B" or "C" in order that each spouse will own as his or her separate property, respectively, the property which is described on Exhibits "B" and "C". Therefore, the Husband and Wife hereby agree that any community property described on Exhibits "B" and "C" is hereby partitioned as follows: . . . (ii) Wife shall own, hold, possess and enjoy, as her sole and separate property, free of any claim of Husband, any and all properties described on Exhibit "C" in which Husband has a community interest, including income from or increases in kind or in value of separate property or labor of either of [sic] both of the parties; and Husband grants, releases and confirms to Wife and to her heirs and assigns all right, title and interest in such property, to have and to hold the entire interest in the property forever[.]

Accordingly, to the extent Pattie transferred any sole management community property to the Trust, the post-nuptial agreement partitioned that property to Pattie as her separate property. Regardless of any right Warren might have under the post-nuptial agreement to demand that Pattie release community property to pay a community debt, there was no longer any community property in the Trust subject to such a demand.

Beal Bank finally argues the trial court erred by granting Pattie's and Warren's motions for summary judgment because the grounds in the motions did not address Beal Bank's request for declarations:

1. that the Judgment constitutes the community property debt of the Gilberts;

2. of the validity of the Trust as it relates to Beal Bank;

3. of the identity, location, and value of the property owned by and under the control of the Gilberts that is subject to execution to satisfy the Judgment;

4. that the non-exempt community estate of the parties is subject to execution to satisfy the Judgment and that community estate includes the property of the Trust;

5. that, at the time of the creation of the Trust, the assets in the investment account were presumed to be the community property of the Gilberts;

6. that income and dividends paid in the investment account prior to the creation of the Trust constituted the community property of the Gilberts; and

7. to the extent the assets in the investment account prior to the creation of the Trust included any separate property, such separate property has been so commingled with the community property of the Gilberts as to lose its character as separate property.

The factual allegations in Beal Bank's pleadings pertained only to the Trust and did not identify any other assets on which the bank sought to execute. Further, Beal Bank's requested declarations pertaining to the nature of the Trust, and Beal Bank's ability to execute on the Trust's property, have implicitly been addressed by the trial court's judgment. Accordingly, we cannot conclude the trial court erred by determining the grounds raised in Pattie's and Warren's motions for summary judgment addressed Beal Bank's requests for declaratory relief.

We resolve both of Beal Bank's issues against it and affirm the trial court's judgment.

/Robert M. Fillmore/
_____
ROBERT M. FILLMORE
JUSTICE

120692F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BEAL BANK, Appellant

No. 05-12-00692-CV      V.

WARREN A. GILBERT, JR. AND PATTIE
PITTMAN GILBERT, INDIVIDUALLY
AND AS THE TRUSTEE OF THE PATTIE
PITTMAN GILBERT SEPARATE
PROPERTY TRUST, Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 08-00184.
Opinion delivered by Justice Fillmore,
Justices Bridges and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Warren A. Gilbert, Jr. and Pattie Pittman Gilbert, Individually and as the Trustee of the Pattie Pittman Gilbert Separate Property Trust recover their costs of this appeal from appellant Beal Bank.

Judgment entered this 18th day of November, 2013.


/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE