**Affirmed and Opinion Filed May 5, 2014**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01730-CV

**JAMES P. MURPHY, Appellant**
**V.**
**REED WILLIAMS, Appellee**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-4116-2012**

## OPINION

Before Justices Moseley, FitzGerald, and Fillmore
Opinion by Justice FitzGerald

This case involves claims of tortious interference and the Real Estate License Act ("RELA"). In two issues, James Murphy, a licensed real estate broker, asserts the trial court erred in granting summary judgment in favor of Reed Williams because RELA does not preclude his tortious interference claims and he raised a fact issue on these claims. Because Williams is not a licensed broker and did not act as a broker, we conclude RELA bars Murphy's tortious interference claims. Therefore, the trial court did not err in granting summary judgment. The trial court's judgment is affirmed.

### BACKGROUND

The dispute in this case arises out of the sale of five tracts of improved and unimproved real property in the Frisco Medical Center subdivision (the "Property") to Healthcare Realty

Trust ("HRT") for $133.5 million dollars and Murphy's claim that he is entitled to compensation for brokering the transaction.

Murphy is a licensed real estate broker and a principal in JPM Realty Property Management, Inc. ("JPM"). Prior to the sale at issue, the Property was owned by four limited partnerships: Frisco POB II Limited, Frisco Surgery Center Limited, Frisco POB I Limited, and Medland, L.P. (collectively, the "Sellers"). Texas Land Management LLC ("TLM") is the general partner of the Sellers. Jim Williams ("Williams Sr.") is the president and managing partner of TLM. His son, Reed Williams ("Williams"), is vice president of TLM. Land Plan Development Corp. ("Land Plan") is also an affiliate of the Sellers. Williams Sr. is the president of Land Plan and Williams serves as its vice president and director of medical development.

In 2010, Murphy was working with the Sellers to secure refinancing for loans secured by liens on the Property. When Murphy learned that the Sellers were willing to market the Property for sale on a limited basis, he approached Williams Sr. about an exclusive written listing agreement. Williams Sr. advised that the Sellers would not authorize a listing agreement for a commission, but indicated he would allow Murphy to market the property on a limited basis in accordance with guidelines dictated by Williams Sr.

Under these guidelines, Murphy was permitted to market the Property to only one prospect at a time as approved by Williams Sr. Murphy initially chose to market the Property to Rainier Capital Markets, LLC ("RCM"). In connection with RCM's contemplated purchase, RCM was required to enter into a nondisclosure agreement with Land Plan. The agreement required that the information and materials provided by Land Plan would be solely for the purpose of evaluating a possible transaction and would be maintained as confidential.

At some juncture, another entity, Rainier Medical Investments ("RMI") became involved with Murphy. The record is unclear as to what relationship, if any, exists between RCM and RMI, other than Williams Sr.'s sworn statement that they are separate companies.

It is generally agreed that Murphy marketed the Property to RCM as authorized. Williams Sr. told Murphy that notwithstanding the Sellers' refusal to enter into a listing agreement with him, Williams Sr. would recommend that Murphy receive a commission if the sale of the Property was consummated.

In late October 2010, Murphy informed Williams Sr. that RCM was not going to purchase the Property. Williams Sr. consented to the substitution of a new prospective purchaser, AmeriMed. Accordingly, AmeriMed and Land Plan entered into a nondisclosure agreement.

Prior to any involvement in the transaction at issue, RMI had been engaged in discussions with HRT about a partnership in a different real estate development on Flower Mound, Texas. RMI and HRT entered into a confidentiality agreement in which RMI agreed to provide HRT with information and analysis concerning acquisition and development opportunities.

At some point in mid-November 2010, without Williams Sr.'s knowledge or approval, RMI contacted HRT about the sale of the Property and provided Seller's confidential information. It appears that RMI obtained this information through RCM. HRT had never been approved as a prospective buyer, and Williams Sr. did not authorize Murphy to consent to RMI providing information to HRT.

In late November, HRT contacted Williams to express an interest in purchasing the Property. Williams asked Williams Sr. for permission to provide confidential information to HRT, and Williams Sr. consented. HRT executed a nondisclosure agreement, and Land Plan, on behalf of the Sellers, began providing financial information to HRT.

An HRT representative made arrangements through Williams to meet with Williams Sr. Murphy subsequently contacted Williams Sr. and claimed that HRT was his prospect, and that he had arranged the meeting.

The sale of the Property to HRT was consummated on December 29, 2010. The purchase agreement does not provide for the payment of a brokerage commission to Murphy, JPM, or any other entity or individual.

After he was denied a commission, Murphy, joined by RMI and JPM (collectively, "Plaintiffs") sued HRT, the Sellers, TLM, Land Plan, Land Plan Medical, L.P. (the latter two together, the "Land Plan Defendants"), Williams Sr. and Williams (all defendants collectively, "Defendants") on various causes of action, including breach of contract, unfair competition, fraud, estoppel, quantum meruit, conspiracy, and tortious interference.

Murphy's claims against HRT were subsequently settled. Following a period of discovery, Defendants moved for traditional and no-evidence summary judgment on all of Plaintiffs' claims. On October 12, 2012, the trial court granted the motion against Plaintiffs in favor of Defendants. The trial court also granted a motion to sever Murphy's claims against the Defendants from the original action.[1] This appeal involves only Murphy's tortious interference claims against Williams.

## ANALYSIS

In his first issue, Murphy asserts the trial court erred in granting summary judgment on his tortious interference claims because Williams acted a broker and RELA does not preclude a broker's tortious interference claim against another broker. Williams responds that summary judgment was appropriate because he did not act as a broker in connection with the sale of the Property.

---

[1] The severance left RMI as the only remaining plaintiff against HRT in the original action.

–4–

Defendants moved for both a traditional and no-evidence summary judgment on the tortious interference claim. We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgments are well-known. *Beal Bank v. Gilbert*, 417 S.W.3d 704, 707–08 (Tex. App.—Dallas 2013, no pet.). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i). To defeat a no-evidence motion for summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of his claim. *Id.*

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Beal Bank*, 417 S.W.3d at 708–09. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* When a party moves for both a no-evidence and a traditional summary judgment, we first review the trial court's summary judgment under the no-evidence standard of Rule 166a(i). *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). If the no-evidence summary judgment was properly granted, we do not reach arguments under the traditional motion for summary judgment. *See id.* Therefore, we begin our inquiry with the no-evidence summary judgment.

Section 1101.806(c) of RELA provides: "A person may not maintain an action in this state to recover a commission for the sale or purchase of real estate unless the promise or agreement on which the action is based, or a memorandum, is in writing and signed by the party against whom the action is brought or by a person authorized by that party to sign the

–5–

document." TEX. OCC. CODE ANN 1101.806(c) (West 2012). But there is an exception to this general rule. Specifically, section 1101.806(a)(2) provides, "This section does not limit a cause of action *among brokers* for interference with business relationships." TEX. OCC. CODE ANN. § 1101.806(a)(2) (West 2012) (emphasis added).

Murphy does not dispute that the crux of his complaint is the failure to pay the commission he claims he was entitled to receive.[2] He also does not dispute that section 1101.806(c) requires that a promise to pay a commission be evidenced in writing. In arguing that the trial court erred in granting summary judgment on his tortious interference claims, Murphy relies only on the exception to the written memorandum requirement set forth in section 1101.806(a)(2). Therefore, we confine our analysis to the exception upon which Murphy relies.[3]

The statute defines a "license holder" as a broker or salesperson licensed under the statute. *See* TEX. OCC. CODE ANN. § 1101.002(4) (West 2012). There is no dispute that Williams is not a licensed broker. But Murphy contends Williams performed one or more of the activities incorporated in the statutory definition of a broker, and is therefore a broker against whom Murphy can maintain an action for tortious interference. According to Murphy, the fact that Williams is not a license holder is irrelevant.

The section of RELA upon which Murphy relies provides:

> A person acts as a broker or salesperson under this chapter if the person, with the expectation of receiving valuable consideration, directly or indirectly performs or offers, attempts, or agrees to perform for another person any act described by section 1101.002(1), as part of a transaction or as an entire transaction.

---

[2] Specifically, Murphy asserts that his "central complaint in this case is the [Williams] fraudulently claimed to be a broker . . . which then caused the [sellers], or alternatively the [purchaser] not to pay [his] commission."

[3] In a single sentence, in his second issue, embedded in the argument concerning evidence of the alleged interference, Murphy states that even if his agreement is unenforceable because of RELA's writing requirement, his tortious interference claims based on an oral contract are not barred as a matter of law. To the extent Murphy argues the summary judgment cannot stand for this reason, we disagree. The tortious interference claims are derivative of an unenforceable oral agreement. *See Trammel Crow Co. No. 60 v. Harkenson*, 944 S.W.2d 631, 632-34 (Tex. 1997); *see also Lathem v. Kruse*, 290 S.W.2d 922, 926 (Tex. App.—Dallas 2009, no pet.).

TEX. OCC. CODE ANN. § 1101.004 (West 2012).[4] But RELA also provides that a person may not act as a broker in the absence of a license to do so. Specifically, the statute provides, "[u]nless a person holds a license issued under this subchapter, the person may not . . . act as or represent that the person is a broker or salesperson . . . ." TEX. OCC. CODE ANN. § 1101.351(a)(1) (West 2012). Murphy offers no explanation for the apparent conflict between the statutory provision requiring that a broker be licensed and his position that Williams acted as a broker despite the absence of a license.

But in the present case, we need not reconcile whether the statutory exception that allows tortious interference claims "among brokers" refers only to licensed brokers or also to one who performs one of the statutorily enumerated actions of a broker. Regardless of how the term "broker" is defined, Murphy did not establish that Williams is a broker.

First, Murphy judicially admitted Williams did not act as a broker with regard to this transaction. In Murphy's sixth amended petition, he states that "the only work [Williams] had done in connection with the sale was to be the fortuitous recipient of HRT's call, which was spurred by Murphy's instructions an hour before." In his opposition to the motion for summary judgment, Murphy stated that Williams "had done absolutely no broker-like work." In his motion to reconsider the summary judgment, Murphy again states that "the only work [Williams] performed in connection with the sale was to be the fortuitous recipient of HRT's call, which was only spurred by Murphy's instructions to HRT literally an hour before." Murphy's appellate brief contains similar statements, as well as the statement that "[t]he evidence demonstrates that

---

[4] The enumerated acts include those performed by a person who " . . . (i) sells, exchanges, purchases, or leases real estate; (ii) offers to sell, exchange, or purchase real estate; (iii) negotiates or attempts to negotiate the . . . sale of real estate; (iv) lists or offers . . . real estate for sale, lease, or exchange; (v) auctions or offers . . . real estate; (vi) deals in options on real estate . . . (vii) aids . . . in locating or obtaining real estate for sale or lease; (viii) procures . . . a prospect to effect the sale, exchange, or lease of real estate; (ix) procures . . . property to effect the sale, exchange, or lease of real estate; (x) controls the acceptance of deposit or rent . . . (xi) provides a written analysis . . . relating to the estimate price of real property . . . ." TEX. OCC. CODE ANN. § 1101.002(1)(A) (West 2012). A broker may also include a person who "is employed by or for an owner of real estate to sell any portion of the real estate." TEX. OCC. CODE ANN. § 1101.002(B)(i) (West 2012)

[Williams] performed none of the tasks of a broker." Murphy also states that Williams "fraudulently *claimed* to be the broker" in connection with the sale of the Property and "claimed" to be entitled to a commission. (Emphasis added).

A judicial admission is a formal waiver of proof usually found in pleadings or the stipulations of the parties. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex. 1980). It is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact and bars the admitting party from disputing it. *Id.* The elements commonly recited for a judicial admission are: (1) a statement made during the course of a judicial proceeding; (2) that is contrary to an essential fact or defense asserted by the person making the admission; (3) that is clear, deliberate, and unequivocal; (4) that, if given conclusive effect, would be consistent with public policy; and (5) that is not destructive of the opposing party's theory of recovery. *Lee v. Lee*, 43 S.W.3d 636, 641–42 (Tex. App.—Fort Worth 2001, no pet.); *Mendoza,* 606 S.W.2d at 694. The public policy underlying the rule is that it would be unjust to permit a party to recover after he has sworn himself out of court by a clear, unequivocal statement. *See Khan v. GBAK Props. Inc*., 371 S.W.3d 347, 357 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Here, in the course of these proceedings, Murphy unequivocally asserted that Williams did not perform any of the statutorily enumerated acts of a broker. These assertions are contrary to Murphy's claim that Williams acted like a broker and should therefore be treated as a broker. The assertions do not destroy Williams's theory of defense, and giving effect to these admissions is consistent with public policy.

Moreover, even if we declined to give effect to Murphy's judicial admissions, and even if we concluded that merely performing the statutorily enumerated activities of a broker is

sufficient to trigger the exception for tortious interference claims among brokers, the summary judgment evidence does not raise a fact issue as to whether Williams acted as a broker.

In support of his argument that Williams acted as a broker, Murphy relies only on Williams's deposition testimony and an excerpt from the purchase agreement. During his deposition, Williams testified as follows:

Q: Did you enter into an agreement for a commission with respect to brokering the [Property]? . . .

A: I did not enter into– ever enter into an agreement for a broker's commission for this campus.

Q: Did you enter into an agreement for some sort of sales fee?

A: Yes . . . .

Q: Can you pinpoint more than that?

A: Conversation was had with Jim Williams in which we had discussed the sale of the campus and the fact that this was my deal . . . . There was never a contractual agreement in writing. We certainly had a verbal discussion. And the discussion was one in which Jim made it clear that any appropriate fee for the sale of the campus would be due to me, and that the nature of that fee was something that he had the ability to engage in discussion with the major decision committee, but was not something he was able to commit to . . . . Whether it was a fee or a bonus or some sort of structure, that was going to be his recommendation, yes.

Q: But up until then, you never had any agreement or expectation for that fee, correct?

A: I had an expectation for that as of November 23 or so.

Q: Because you saw that HRT might be coming in as a buyer?

A: Yes. And if I was able to bring them to the table as a buyer, that I knew would require a tremendous amount of work, and if I was able to do that that would be compensation that would befit me for that process.

Q: And who would be responsible to pay that compensation? Would it be LandPlan?

A: I don't know exactly.

Significantly, however, Williams also testified that he performed these activities as part of his employment responsibilities. Specifically, Williams stated:

> Q: All of the efforts you were undertaking to have HRT sold, you were undertaking in your capacity as a LandPlan employee, correct?
>
> A: I was a LandPlan employee, that is correct. All of my efforts in this endeavor were made to get the deal done.

Read in its appropriate context, this testimony does not raise a fact issue as to whether Williams acted as a broker. Instead, it simply shows that Williams, acting as an officer of the company, worked to facilitate the sale of company assets. The potential sale required extra effort on his part, and he expected to be compensated for this effort. On these facts, adopting the expansive definition urged by Murphy invites the categorization of every corporate officer in the state as a "broker." Such an expansive application goes far beyond the purpose of the statute. *See Shanklin v. Bassoe Offshore, Inc.*, 415 S.W.3d 311, 321 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (describing purpose of RELA as protection for the public in its dealings with real estate agents). We reject this expansive application.

Murphy's reliance on an isolated section of the purchase agreement is similarly misplaced. Murphy claims that the identification of Williams as one of several potential claimants who may claim to be entitled to a commission, fee, or other compensation demonstrates Williams acted as a broker. In this regard, the purchase agreement provides:

> Purchaser discloses that it is aware that the following persons or entities may claim a commission, finders and/or other fee, or other compensation in connection with the sale and acquisition of the Property by Purchaser: Rainier Medical Investments, Mr. Jim Murphy, and Mr. Reed Williams . . . ("Possible Claimants"). Purchaser represents and warrants to Sellers that it has not entered into a written agreement with any of the Possible Claimants, nor has it agreed to pay a commission, fee, or other compensation to any Possible Claimants.

This language does not demonstrate that Williams acted as a broker. Instead, it merely identifies Williams as a potential claimant to some type of fee, and then expressly disclaims that

there is any kind of an agreement for such fee. It is axiomatic that the fact that one may claim compensation or a fee does not establish that one is actually entitled to a fee or that he acted as a broker. Indeed, the paragraph immediately preceding the paragraph upon which Murphy relies expressly states:

> Each Seller represents and warrants to the Purchaser that no broker or other person or entity, including the Possible Claimants (as defined below) is entitled to a commission, finders and/or other fee, or other compensation in connection with the sale and acquisition of the Property by Purchaser . . . .

Because the summary judgment evidence does not raise a fact issue as to whether Williams acted as a broker, section 1101.806(a)(2) allowing a tortious interference action among brokers does not apply, and the trial court did not err in granting summary judgment on Murphy's tortious interference claim against Williams. Murphy's first issue is overruled.

Because we have concluded that Murphy's tortious interference claims are barred under RELA, we need not consider whether Murphy's summary judgment evidence raised a fact issue with regard to such claims. *See* TEX. R. APP. P. 47.1. The trial court's judgment is affirmed.

/Kerry P. FitzGerald/
_____
KERRY P. FITZGERALD
JUSTICE

121730F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JAMES P. MURPHY, Appellant

No. 05-12-01730-CV     V.

REED WILLIAMS, Appellee

On Appeal from the 296th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 296-4116-2012.
Opinion delivered by Justice FitzGerald.
Justices Moseley and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee REED WILLIAMS recover his costs of this appeal from appellant JAMES P. MURPHY.

Judgment entered May 5, 2014

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE