**VACATE, DISMISS and AFFIRM; and Opinion Filed March 20, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01616-CV

**PAMELA A. BEINAR, Appellant**

**V.**

**MICHAEL J. DEEGAN, ELIZABETH F. DEEGAN, AND GLEN LAKES HOMEOWNERS' ASSOCIATION, INC., Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-02783**

## OPINION

Before Justices Bridges, O'Neill, and Brown
Opinion by Justice O'Neill

This case involves a dispute between neighbors. Appellant Pamela A. Beinar filed suit against appellees Michael J. Deegan, Elizabeth F. Deegan, and Glen Lakes Homeowners' Association for damages to her property allegedly caused by the Deegans' landscaping renovations. The trial court granted both a traditional and no-evidence summary judgment in favor of appellees. In nine issues, Beinar challenges whether the trial court property sustained objections to her summary judgment evidence and whether she presented more than a scintilla of evidence to defeat summary judgment.

We vacate the trial court's September 6, 2012 order granting the Deegans' no-evidence motion for summary judgment as to Beinar's negligence and contract claims and dismiss those claims without prejudice for want of jurisdiction. In all other respects, the judgment in favor of

the Deegans is affirmed. The trial court's September 6, 2012 order granting the HOA's no-evidence motion for summary judgment is affirmed.

**Background**

Beinar purchased her lot in the Glen Lakes Community in 1993. As a condition to the purchase of her lot, she insisted a drainage system, which was recommended by the professional engineer who inspected her lot, be installed along the West side of her residence to prevent surface water from collecting around her foundation. After installation of the drainage system, surface water was directed away from her foundation.

The original developer of Glen Lakes afforded an easement between certain adjacent lots. Such an easement existed between the Deegans' and Beinar's homes. Pursuant to the Declaration of Use Easements, the Deegans' lot is the dominant estate, and Beinar's lot is the servient estate. Any proposed uses of the easements were required to be submitted to the HOA for approval. The Deegans submitted plans that included creation of a concrete patio and other landscaping within the easement area between the two homes. Despite Beinar's objections to the proposal because of potential effects to her lot, the HOA approved the plans. The Deegans' renovations were completed in June 2011.

Beinar claimed that after the renovations, the drains that had previously directed the flow of water away from her home were altered in such a way that water began to flow towards her home and collected at her foundation. She further believed the shrubbery installed within a foot of her home caused moisture to collect at her foundation. Beinar believed the landscaping and construction caused two new tension cracks outside her residence.

On August 16, 2012 Owen T. Tolson III, a Texas Professional Engineer, evaluated Beinar's home. In Tolson's opinion, the tension cracks were signs of distress to the foundation consistent with, and most likely caused by, excess moisture along the foundation at the easement

area. He further opined (1) drainage on the West side of Beinar's lot was inadequate to remove surface run-off; (2) the surface drain system was too close to Beinar's foundation to properly collect and remove run-off away from the foundation; and (3) the landscaping was growing too close to the foundation. He believed if certain remedial steps were not taken, Beinar would incur further damage to her property.

Beinar filed suit against the Deegans alleging negligence, breach of contract, and a violation of section 11.086(a)(3) of the Texas Water Code. She also sought a declaratory judgment setting forth the rights and obligations of the parties pursuant to the Declaration of Use Easements and injunctive relief. She filed suit against the HOA for negligence and violation of section 11.086(a)(3) of the Texas Water Code.

The Deegans and the HOA filed traditional and no-evidence motions for summary judgment. The Deegans argued summary judgment was appropriate because Beinar was seeking an advisory opinion. Specifically, they claimed Beinar failed to present any competent summary judgment evidence that she had been damaged by the Deegans' improvements to their property; therefore, no "live controversy" existed for the court to rule on. The HOA joined the Deegans' motions for summary judgment and filed a separate motion alleging Beinar had not been damaged as a result of any landscaping conducted by it.

Beinar filed a response and attached her personal affidavit and Tolson's affidavit. In her affidavit, Beinar described water collection around her foundation since the completion of the Deegans' landscaping project and new tension cracks that were not present before the project. She further argued her claims were ripe because she was not required to show that an injury had actually occurred, provided that injury is sufficiently likely to occur. She claimed she is likely to sustain damage to her property as a result of the Deegans' renovations and will continue to suffer damage if the renovations are not modified.

–3–

The Deegans filed a reply and objections to Beinar's summary judgment evidence. They objected to portions of Beinar's affidavit because it included improper factual and/or legal conclusions, interested party testimony, improper foundation, and speculation. The Deegans objected to Tolson's affidavit because it included new, untimely expert testimony. The HOA did not join the Deegans' objections or file its own separate objections to Beinar's summary judgment evidence.

The trial court sustained the Deegans' objections to Beinar's summary judgment evidence and granted both the Deegans' traditional and no-evidence motions for summary judgment. In a separate order, the trial court granted the HOA's motions for summary judgment. This appeal followed.

### The Deegans' Objections to Summary Judgment Evidence

In her first and second issues, Beinar contends the trial court erroneously sustained the Deegans' objections to portions of her affidavit and Tolson's affidavit. Before addressing the ripeness issue or the merits of the summary judgments, we must address these evidentiary issues.

An appellate court reviews a trial court's ruling sustaining an objection to summary judgment evidence for an abuse of discretion. *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). A trial court abuses its discretion if it acts arbitrarily and unreasonably. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

An appellant has the burden to bring forth a record that is sufficient to show the trial court abused its discretion when it sustained the objections to summary judgment evidence. As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). When a party fails to object to the trial court's ruling that sustains an objection to her summary judgment evidence, she has not preserved the right to complain on appeal about the

trial court's ruling. *Cantu*, 195 S.W.3d at 871; *Selgas v. Henderson Cnty. Appraisal Dist.*, No. 12-10-00021-CV, 2011 WL 5593138, at *5 (Tex. App.—Tyler Nov. 16, 2011, pet. denied) (mem. op.); *Sw. Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 273 (Tex. App.—Amarillo 2008, pet. denied) (noting there was nothing in the record showing written responses to objections or a motion for reconsideration of the trial court's order sustaining objections to summary judgment evidence).

Here, the Deegans' objected to paragraphs 3–5 and 7–11 of Beinar's personal affidavit because it included "improper factual and/or legal conclusions, interested party testimony, improper predicate/foundation, and speculation." In the order granting summary judgment, the trial court sustained "Defendants objections to Plaintiff's evidence." Although Beinar filed a motion for new trial and a motion for reconsideration, she did not object to the trial court's sustaining of the objections to her affidavit or urge the trial court to reconsider its ruling. In fact, she admitted to focusing her motion for new trial on the Tolson affidavit "because the Court's comments at the hearing on Defendant's Motions indicated the admissibility of Tolson's affidavit to be the Court's primary concern."[1]

Because Beinar has not identified where in the record she objected to the trial court's ruling and our review of the record revealed no such objection, we conclude Beinar has waived her complaint as to the trial court's ruling on the Deegans' objections to her affidavit. Accordingly, we do not consider paragraphs 3–5 and 7–11 of Beinar's affidavit. We overrule Beinar's first issue.

Because Beinar challenged the trial court's ruling as to Tolson's affidavit in her motion for new trial and motion for reconsideration, her second issue is properly preserved for our review.

[1] A transcript from the summary judgment hearing is not included in the appellate record.

On September 7, 2011, as part of her designation of experts, Beinar attached a report based on Tolson's August 23, 2011 onsite visual observations of her property. In the "BACKGROUND" section of his report, Tolson noted that "In April 2011 a landscape contractor is reported to have relocated the surface drain system next to west perimeter beam (Photo 8-12), added paving, and planted new shrubs adjacent to the west perimeter beam of home." He observed some areas of distress around the outside of the home. His "CONCLUSIONS" included the following:

> Lot grading along the west side of the house slopes down towards foundation where surface runoff *can* pond next to house. Roots of the shrubs grow along west and south sides of house *can* remove moisture from supporting soils under foundation via transpiration.
>
> Based on the observations and information above, the foundation movement and deflections measured is not of a large magnitude at this time. Overall slab deflections of 1 3/4 inch or less across house are considered to be typical for a home of this age and construction, supported by expansive clay soils. *No foundation repairs or adjustments are needed*.

[Emphasis added.] He recommended relocating the surface drain away from the foundation, as first recommended by Jenson Associates in 1993, installing a root barrier, regrading portions of the lot to assist with water runoff, and following foundation maintenance procedures.

On August 16, 2012, Tolson performed another onsite examination of Beinar's property. Tolson included information and opinions from his onsite examination in an affidavit, which Beinar attached to her August 29, 2012 response to the traditional and no-evidence motions for summary judgment. Beinar's response was filed seven days before the summary judgment hearing. In the affidavit, Tolson for the first time specifically said that actions by the Deegans' renovations caused damage to Beinar's property. His affidavit included the following objected-to statements:

> 8. The Deegans' renovations to the Easement Area described in this Affidavit divert rainwater and surface runoff toward the

Property and the Foundation. . . . due to its location in proximity to the Property, the paving the Deegans added to the Easement Area prevents the ground in the Easement Area from soaking up rainwater and runoff, and diverts the flow of the water which runs off the paved area toward the Foundation.

9.       . . . In my opinion, the inadequate drainage resulting from the Deegans' renovations to the Easement Area has caused, and will continue to cause in the future, damage to the Foundation and Ms. Beinar's residence. . . . Rainwater and surface runoff should not be allowed to collect next to a foundation as is occurring here as a result of the Deegans' renovations to the Easement Area. The present condition of the Easement Area described in this Affidavit is causing excess moisture to collect at the west perimeter beam of the Foundation and is causing foundational movement. It will continue to cause foundational movement, damaging the structure in the future, unless corrected.

10.      During my first examination of the Property in August 2011, I observed tension cracks . . . . I determined that the movement of the Foundation at that time was typical for a home of its age and that no foundation repairs or adjustments were yet needed. When I examined the Property in August 2012, I noted the presence of two additional repaired cracks in the exterior west wall of the structure which were not present at the time I examined the Property in August 2011. In my opinion, this additional distress is consistent with, and was most likely caused by excess moisture along the Foundation in the Easement Area.

11.      In my opinion, it is likely that the current conditions of the Easement Area as created by the Deegans' renovations will cause damage to the Foundation and Ms. Beinar's residence in the future in that the conditions will continue to create variations in the soil moisture along the west side of the Foundation.

He then opined on needed modifications to prevent further damage.

The Deegans' objected to the above paragraphs in their summary judgment reply because they included new, inadmissible expert testimony, which Beinar failed to timely supplement or amend under the discovery rules. Beinar argued the affidavit did not contain new, undisclosed opinions; therefore, Texas Rule of Civil Procedure 193.5 regarding supplementation did not apply. We disagree with Beinar.

A party's duty to supplement written discovery regarding a testifying expert is governed by Texas Rule of Civil Procedure 193.5. TEX. R. CIV. P. 193.5. Per the rule, the duty to supplement or amend arises when a party learns that its previous responses to written discovery were incomplete or inaccurate when made or are no longer complete or correct. TEX. R. CIV. P. 193.5(a). In addition to the requirements of rule 193.5, a party must amend or supplement any written report of an expert that is retained, employed, or controlled. *Id.* However, caution must be taken in applying the rule because it does not prevent an expert from refining calculations and perfecting a report through the time of trial. *See, e.g., Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 49 (Tex. App.—Amarillo 2002, pet. denied); *see also Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 53 (Tex. App.—San Antonio 2006, no pet.) ("The testimony of an expert should not be barred because of a change in some minor detail of the person's work not disclosed before trial.").

A party who fails to amend or supplement a discovery response in a timely manner may not introduce into evidence the material or information that was not timely disclosed unless the court finds (1) there was good cause for the failure to timely amend or supplement the discovery response or (2) the failure to timely amend or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties. TEX. R. CIV. P. 193.6(a). This exclusionary rule applies equally to trial and summary judgment proceedings. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009).

Beinar relies on *Navistar International Transportation Corp. v. Crim Truck and Tractor Co.*, 883 S.W.2d 687 (Tex. App.—Texarkana 1994, writ denied) and *Norfolk Southern Railway Co. v. Bailey*, 92 S.W.3d 577 (Tex. App.—Austin 2002, no pet.) to support her position that the trial court abused its discretion by excluding Tolson's affidavit because it merely expanded upon

subject matters previously disclosed in his report and attached to her expert designation. These cases, however, are distinguishable.

In *Navistar*, an expert provided deposition testimony about net profits for a trucking business and the value of a trucking franchise. *Navistar*, 883 S.W.2d at 690. A few hours into the deposition, an attorney asked the expert if he had formulated any new opinions about the case. *Id*. The expert responded, "Not specifically. After hearing these depositions, I need to go through the numbers that were prepared here and analyze them and see where I have problems and concerns. I do have some problems and concerns; but I don't have any new opinions as of yet." *Id*. When the expert testified at trial, CT&T objected and argued the expert's testimony should be excluded because he failed to supplement his opinions with a new damages report. *Id*. at 691. The trial court sustained the objection; however, the court of appeals reversed. The court of appeals concluded, "Here, there was not so much a material change in [the expert's] testimony as there was an expansion on an already disclosed subject." *Id*. The court further noted CT&T failed to diligently pursue the matter because based on the expert's statements during the deposition, CT&T knew the expert had problems with the damages model and would likely revise his opinion.

Under the present facts, Tolson did not merely expand on a previously disclosed opinion. Rather, he completely changed his opinion. In his initial report, while Tolson observed cracks and noted a slight change in the foundation's elevation, he specifically concluded, "the foundation movement and deflections measures is not of a large magnitude at this time" and was considered "typical for a home of this age and construction." He then stated, "No foundation repairs or adjustments are needed." Approximately a year later, he then noted new tension cracks he attributed to the Deegans' renovations, and he stated such renovations caused, and will cause in the future, damage to Beinar's foundation. Unlike the expert in *Navistar*, Tolson at no

point prior to his affidavit, filed seven days before the summary judgment hearing, indicated in any way he believed the Deegans' caused any damage to Beinar's property. Thus, the Deegans' had no reason to delve further into his opinions.

We are likewise unpersuaded by Beinar's reliance on *Norfolk*. In that case, the court concluded the trial court did not abuse its discretion by allowing the expert testimony of a doctor who revised his original diagnosis of the plaintiff from "asbestosis with no impairment" to "asbestosis with mild impairment." *Norfolk*, 92 S.W.3d at 581. The court noted that while the better practice would have been to supplement the expert's opinion, it concluded Norfolk was not unfairly surprised by the revised diagnosis because it had received a copy of the later pulmonary test results two months before trial. *Id*. Further, "Because asbestosis is a progressive disease [citations omitted], it should have been no surprise to Norfolk Southern that Bailey's condition might worsen between the original diagnosis in early 1997 and the trial over four years later in October 2001." *Id*. As previously stated, the Deegans' did not receive any notice of Tolson's new opinion until seven days before the summary judgment hearing. Moreover, there was no indication in Tolson's report that Beinar's foundation might continue to move because of the renovations, which is a key distinction from scientific proof of a disease that is known to progress and worsen over time.

We acknowledge that in his affidavit Tolson stated, "During my first examination of the Property in August 2011 . . . I determined that the movement of the Foundation at that time was typical for a home of its age and that no foundation repairs or adjustments were *yet* needed." [Emphasis added.] However, Tolson's report does not say repairs or adjustments were not *yet* needed; rather, he specifically said, "No foundation or adjustments are needed." He made no indication he believed a change in the foundation might or would occur in the future. Thus, unlike the expert opinion in *Norfolk*, Tolson's opinion does not fall "somewhere between a

–10–

refinement in calculations . . . and an expansion of an already disclosed subject . . . both of which are admissible without the need for supplementation." *Norfolk*, 92 S.W.3d at 581.

Rather, we find the reasoning of the appellate court in *In re M.H.* persuasive. In that case, a doctor testified at a hearing that a mother involved in a termination suit suffered from a depressive personality disorder, but did not have factitious disorder. *In re M.H.*, 319 S.W.3d 137, 148–49 (Tex. App.—Waco 2010, no pet.). The doctor reviewed additional medical records a week before trial and opined at trial that, "based on this additional information, 'factitious disorder is more likely.'" *Id.* at 149. The Department of Family and Protective Services argued there was no unfair surprise or prejudice by its failure to disclose the differing opinion because it represented "only a refinement of his previous diagnosis, a perfection of his report, and an expansion of an already-disclosed subject." *Id.* The court disagreed. *Id.* The doctor's opinion changed from an affirmative determination that the mother did not have factitious disorder to the exact opposite determination, namely, that she likely did have factitious disorder. *Id.*

Tolson's one hundred eighty degree switch of his opinion regarding Beinar's foundation is analogous to the doctor's excluded opinions in *M.H.* Thus, because Tolson's opinion required supplementation under rule 193.5(a) and Beinar failed to supplement his opinion in a timely manner, the trial court acted within its discretion in excluding such summary judgment evidence unless Beinar established good cause or a lack of unfair surprise to the Deegans. TEX. R. CIV. P. 193.6(a), (b); *Norfolk*, 92 S.W.3d at 581. Beinar failed to meet her burden. Again, her only argument that the Deegans would not be surprised by Tolson's testimony is based on statements in his earlier report. However, his ultimate conclusion in the report was that the property showed no damage.

A party must not be allowed to present a material alternation of an expert's opinion that would constitute a surprise attack. The purpose of requiring timely disclosure of a material

change in an expert's opinion is to give the other party an opportunity to prepare a rebuttal. *Norfolk*, 92 S.W.3d at 581. The Deegans were not given this opportunity. As such, the trial court did not abuse its discretion by sustaining the Deegans' objections and excluding Tolson's affidavit attached to Beinar's summary judgment response. Accordingly, we overrule Beinar's second issue.

## The Deegans' Motions for Summary Judgment

In her third, fourth, and fifth issues, Beinar argues she presented more than a scintilla of evidence of her damages as a result of the Deegans' renovations, she is reasonably likely to sustain damages in the future, and her claim is ripe for determination.

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). The standards of review for traditional and no-evidence summary judgments are well-known. *Beal Bank v. Gilbert*, No. 05-12-00692-CV, 2013 WL 6054494, at *2 (Tex. App.—Dallas Nov. 18, 2013, no pet.). With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. TEX. R. CIV. P. 166a(i). To defeat a no-evidence motion for summary judgment, the nonmovant is required to produce evidence that raises a genuine issue of material fact on each challenged element of her claim. *Id.*

In reviewing both a traditional and no-evidence summary judgment, we consider the evidence in the light most favorable to the nonmovant. *Beal Bank*, 2013 WL 6054494, at *3. We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* Because the

–12–

Deegans' presented both no-evidence and traditional grounds, we first address challenges to the no-evidence summary judgment. *Dean A. Smith Sales, Inc. v. Metal Sys., Inc.*, 397 S.W.3d 305, 306 (Tex. App.—Dallas 2013, pet. denied) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)).

In their no-evidence motion for summary judgment, the Deegans argued Beinar's negligence and breach of contract claims were not ripe because she failed to present any evidence of damages they caused by renovating their property. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (prevailing on a negligence claim requires a showing of a duty, a breach of that duty, and damages proximately caused by the breach of the duty); *see also Kay v. N. Tex. Rod & Custom*, 109 S.W.3d 924, 927 (Tex. App.—Dallas 2003, no pet.) (to prevail on a breach of contract claim, a party must show the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and damages resulting from the breach). The Deegans further asserted Beinar was seeking an advisory opinion because "There is simply no basis for Plaintiff alleging that she has been damaged as a result of any landscaping conducted by [them]." They further argued Beinar's petition was based on future events that were "too conjectural, hypothetical or remote, which might not ever occur, as to give rise to a ripe cause of action."

They separately argued there was no evidence they diverted or impounded the natural flow of surface water causing damage in violation of the Texas Water Code. TEX. WATER CODE ANN. § 11.086(a) (West 2008); *Contreras v. Bennett*, 361 S.W.3d 174, 178 (Tex. App.—El Paso 2011, no pet.) (stating elements for violation of water code section 11.086 ). They also argued there was no evidence Beinar was entitled to injunctive relief. *See Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 505 (Tex. App.—Texarkana 2002, pet. denied) (elements of injunctive relief include (1) the existence of a wrongful act; (2) the

existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law). And lastly, because Beinar failed to bring forth any evidence to support her claims, the Deegans argued there was no evidence to support declaratory judgment. *See Rawlings v. Gonzalez*, 407 S.W.3d 420, 426 (Tex. App.—Dallas 2013, no pet.) (stating that before a party is entitled to declaratory relief, a party must show "a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought").

We first note Beinar has not challenged on appeal the trial court's granting of summary judgment on her request for declaratory relief. Accordingly, we need not address the validity of summary judgment as to this claim, and it is affirmed. *See, e.g., Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex. 2001) (concluding court of appeals erred in reversing summary judgment on professional negligence claim because appellant never complained about summary judgment on that claim); *Burrows v. Daring*, No. 14-06-00473-CV, 2008 WL 3016040, at *2 (Tex. App.—Houston [14th Dist.] Aug. 5, 2008, no pet.) (mem. op.) (affirming summary judgment causes of action not challenged on appeal).

We now turn to the Deegans' no-evidence challenges on Beinar's negligence and contract causes of action because the claims are not ripe. Ripeness is a threshold issue that implicates subject-matter jurisdiction. *Robinson v. Parke*r, 353 S.W.3d 753, 755 (Tex. 2011). The ripeness inquiry focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Lazarides v. Farris*, 367 S.W.3d 788, 802 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed. *Robinson*, 353 S.W.3d at 755. "The essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of

–14–

an advisory opinion, advising what the law would be on a hypothetical set of facts." *Id*. (quoting

*Patterson v. Planned Parenthood of Houston & Se. Tex., Inc*., 971 S.W.2d 439, 44 (Tex. 1998)).

Beinar relied exclusively on her personal affidavit, Tolson's report, and Tolson's affidavit to create a fact issue regarding damages allegedly caused by the Deegans' renovations. Because the trial court did not abuse its discretion by sustaining the Deegans' objections to portions of Beinar's and Tolson's affidavits, we must determine whether the evidence left for the trial court's consideration was enough to establish Beinar's claims were ripe for consideration.

We first consider Beinar's affidavit. The following statements were before the trial court:

> 1.  My name is Pamela A. Beinar. I am the Plaintiff in the above-entitled and numbered cause. I am also the owner of Lot 33 of the Glen Lakes Community ("Glen Lakes"), a development located in Dallas, Texas. Michael J. Deegan and Elizabeth F. Deegan (together, the "Deegans") are my next-door neighbors and own Lot 32 of Glen Lakes.
>
> 2.  In or around April 2011, the Deegans submitted proposed plans to the homeowners' association for Glen Lakes, Glen Lakes Homeowners' Association, Inc. ("HOA"), regarding a concrete patio, concrete slab construction, foundation and landscaping within an easement area between our lots on the west side of the residence. The HOA approved the Deegans' plans. In April 2011, I objected to the Deegans' plans for the easement area because I believed they would adversely affect my property. Nevertheless, the HOA approved the plans and the Deegans proceeded with construction.
>
> . . .
>
> 6.  The Deegans also planted landscaping very close to the foundation of my home, much of which is planted within a foot of my home's foundation. I have observed that moisture collects at the base of the plants the Deegans installed, causing that area of the ground to hold water where it did not do so before the Deegans' installed the landscaping at issue.

None of Beinar's statements establish any damages to her property caused by the Deegans' renovations. While she believed their plans for landscaping would adversely affect her property and objected to the HOA, her belief in no way confirms any damage to her property as a

result of the landscaping. The same is true as to her observations of moisture collecting at the base of certain plants allegedly causing an area of the ground to hold water that did not do so before the landscaping. While Beinar was certainly capable of testifying as to what she observed on her property, this observation did not establish present damages or the likelihood of future damages to her property caused by any actions of the Deegans. The determination of such causation would require a qualified expert. Thus, Beinar's affidavit did not present evidence of any damages to support the ripeness of her claims for adjudication.

We now consider Tolson's affidavit. In addition to two paragraphs discussing his educational background and his expertise in construction of single family residences, the affidavit included the following unobjected-to paragraph:

> 4. On August 23, 2011, I performed an onsite examination of the structure, foundation and lot drainage at 5 Glenmeadow Court, Dallas, Texas, which is owned by Pamela A. Beinar (the "Property"), who I understand to be the Plaintiff in this matter. I performed another onsite visual examination of the structure, foundation and lot drainage at the Property, as well as on onsite visual examination of the exterior wall on the west side of the Property (the "Easement Area") on August 16, 2012. My visual examinations of the Property included looking for evidence of distress and movement of the foundation of the residence located at the Property (the "Foundation"), including cracking on exterior and interior wall finishes, separations at cornice/eaves and interior wall/ceiling seams, and fireplace rotation. I also took measurements of the Foundation's grade elevation differential with a water level to examine the existing levelness of the Foundation. Additionally, I observed the drainage conditions around the structure (including the Easement Area), including the soil grade at the Foundation, lot and roof drainage, landscaping and vegetation adjacent to the structure of the Property, and drainage systems installed on the Property. The opinions stated in this Affidavit are based upon my examinations in these regards, as well as my education, training, and experience as a Professional Engineer, and a structural and geotechnical engineer, as described above. In stating the opinions herein, I also considered and took note of physical data regarding the Property, including the soil and geological classifications for the Property, surrounding structures and conditions, its age, location, type of foundation, and

orientation of the structure, and interviewed Ms. Beinar regarding the conditions of the Property.

Similar to Beinar's affidavit, the only evidence the court could properly consider in Tolson's affidavit does not establish any damages or the likelihood of any future damages to Beinar's property caused by the Deegans. Moreover, Beinar cannot rely on Tolson's report because it specifically says her home was not damaged. Therefore, because Beinar failed to present any competent evidence of present or future damages to her property, and this Court is prohibited from writing an advisory opinion based on contingent and hypothetical events that may not occur, we conclude Beinar's negligence and contract claims are not ripe for adjudication. *See, e.g. Robinson*, 353 S.W.3d at 755 ("The essence of the ripeness doctrine is to avoid premature adjudication . . . [and] to hold otherwise would be the essence of an advisory opinion, advising what the law would be on a hypothetical set of facts."). We overrule Beinar's third, fourth, fifth, and eighth issues.

We now turn to Beinar's causes of action for violation of Texas Water Code section 11.086 and her request for injunctive relief. The Deegans did not challenge these claims for lack of ripeness in their no-evidence motion for summary judgment. Rather, they argued Beinar presented no evidence of the essential elements of each claim.

Under section 11.086, "No person may divert or impound the natural flow of surface waters in this state or permit diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." TEX. WATER CODE ANN. § 11.086(a). The Deegans argued (1) there is no evidence they diverted or impounded the natural flow of surface water; (2) there is no evidence showing that any diversion damaged Beinar's property; and (3) there is no evidence the complained-of water is "surface water."

–17–

Considering the evidence before the trial court, as detailed above, Beinar simply failed to provide any competent summary judgment evidence to support any damages to her property. As repeatedly stated, the only evidence before the trial court specifically indicated that no foundation repairs or adjustments were needed, and slab deflections were typical for a home of its age and construction. Because she failed to present evidence of one essential element of her claim, the trial court properly granted the Deegans' no-evidence summary judgment on Beinar's Texas Water Code claim. Thus, Beinar's seventh issue is overruled.

We reach the same conclusion as to Beinar's claim for injunctive relief. The Deegans argued, "There is simply no evidence nor can Plaintiff show the existence of imminent harm, the existence of irreparable injury; and/or the absence of an adequate remedy at law." Because Beinar failed to bring forth competent evidence of damages to her property, she cannot establish irreparable injury. Without evidence of this essential element, the trial court properly granted the Deegans' no-evidence motion for summary judgment on this claim. Accordingly, Beinar's ninth issue is overruled.

Because the trial court properly granted the Deegans' no-evidence motion for summary judgment on Beinar's water code claim and her claim for injunctive relief, we need not address the merits of the Deegans' traditional motion for summary judgment. *See* TEX. R. APP. P. 47.1; *Dean A. Smith Sales, Inc*., 397 S.W.3d at 307. We now turn to the HOA's motions for summary judgment.

### Merits of the HOA's Motions for Summary Judgment

Beinar filed suit against the HOA for negligence and claimed the HOA "negligently approved the plans submitted by the Deegans without properly addressing the adverse affect the proposed improvements would have on Ms. Beinar's home." Beinar also alleged violation of

–18–

section 11.086 of the Texas Water Code because the HOA's actions resulted in the unlawful diversion of surface water that damaged, and will continue to damage, her property.

The HOA filed traditional and no-evidence motions for summary judgment incorporating the Deegans' motions in their entirety and separately argued that "Plaintiff has no evidence of an essential element of Plaintiff's claim, i.e., that Plaintiff has been damaged as a result of any landscaping conducted by Defendant Glen Lakes." As noted above, however, the HOA did not join the Deegans' objections or file its own objections to Beinar's affidavit evidence. Thus, we may consider all the evidence in the summary judgment record in our review of the trial court's judgment. *See, e.g., JMJ Acquistions Mgmt., LLC v. Peterson*, 407 S.W.3d 371, 375 (Tex. App.—Dallas 2013, no pet.).

Like the Deegans, we must first determine if Beinar's claims against the HOA are ripe. As stated above, ripeness is a threshold issue that implicates subject matter jurisdiction. *Robinson*, 353 S.W.3d at 755. The inquiry focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated or may not occur at all. *Lazarides*, 367 S.W.3d at 802.

Considering all the evidence, we conclude Beinar's claims against the HOA are ripe for adjudication. Tolson explained in his affidavit that he visually inspected the property on August 23, 2011 and again on August 16, 2012. He noted that surface drains are now too close to the foundation and do not properly collect and remove rainwater and surface runoff away from the foundation. He noted that such conditions cause moisture to collect at the foundation. He also noted the presence of two additional repaired cracks in an exterior wall that were not present during his 2011 inspection. He concluded that "the inadequate drainage resulting from the Deegans' renovations to the Easement Area has caused, and will cause in the future, damage to the Foundation and Ms. Beinar's residence." He concluded his affidavit with suggested

modifications to prevent future damage. This unobjected-to evidence establishes that the alleged damage to Beinar's property is not uncertain or contingent on future events. Accordingly, Beinar's negligence and water code causes of action against the HOA are ripe for adjudication.[2]

We now turn to whether Beinar presented more than a scintilla of evidence as to the HOA's challenge of the essential elements of damages caused by its alleged negligent approval of the Deegans' landscaping plans. *See* TEX. R. APP. P. 166a(i); *Sheffield v. Drake*, 255 S.W.3d 779, 782 (Tex. App.—Eastland 2008, pet. denied) ("A trial court must grant a proper no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element of the claim.").

In her affidavit, Beinar stated the following:

> 3. Even though the Application for Architectural Change the Deegans submitted to the HOA for approval (which I have reviewed) does not mention the installation of, or changes to any existing, drainage system, the Deegans relocated portions of the underground drainage system which had been previously designed and installed within the easement area. That system was specifically designed to protect the foundation of my home and was installed as a condition to my purchase of the home in 1993.

She attached to her affidavit the Application for Architectural Change. The form asks the applicant to "briefly describe all proposed improvements, alterations or changes to your lot or home." The Deegans said, "Our plan includes taking out existing patio and plantings on side of home within gate. All new patio and plantings will be installed as per plan." Attached to their application was a drawing illustrating their plans. As acknowledged by Beinar, the application submitted for the HOA's approval is silent as to removal or alterations of the existing drainage

---

[2] We acknowledge the perhaps inequity in concluding Beinar's claims are ripe for adjudication against the HOA and reaching the opposite conclusion as to her claims against the Deegans; however, we are bound by the evidence properly before the trial court. In this case, the failure of the HOA to object to Benair's evidence demands the differing result.

system. Thus, the HOA did not approve moving surface drains. Rather, it approved the installation of a new patio and plantings "per the plan."

Tolson's opinions in his affidavit regarding damage to Beinar's foundation are partially premised on the relocation of multiple surface drains. He notes the Deegans "undertook renovations . . . . [which] included relocating multiple surface drains that were part of the drainage system which had been installed in September 1993." He observed that "the surface drains leading to the drainage system are now located too close to the Foundation to properly collect and remove rainwater and surface runoff away from the Foundation." He opined that the grade and paving of the easement area, "combined with the locations of the surface drains being too close to the Foundation," resulted in inadequate drainage. This drainage "has caused, and will cause in the future, damage to the Foundation and Ms. Beinar's residence." Such damage included foundational movement. He further concluded:

> 11. In my opinion, it is likely that the current conditions of the Easement Area *as created by the Deegans' renovations* will cause damage to the Foundation and Ms. Beinar's residence in the future in that the conditions will continue to create variations in the soil moisture along the west side of the Foundation. Therefore, it is my opinion that the damage to the Foundation and the structure which is likely to occur in the future, are a natural and probable consequence of the renovations of the Easement Area as discussed in this Affidavit.

[Emphasis added.] Thus, Tolson's expert opinion fails to provide any evidence that the HOA's approval of the Deegans' Application for Architectural Change caused any damages to Beinar's property. Rather, the evidence shows the HOA approved a plan unaware that any alleged relocation of surface drains would occur and the expert testimony establishes that any alleged damage was likely the result of conditions "created by the Deegans' renovations."

Furthermore, even if we concluded Beinar presented more than a scintilla of evidence to establish that her home was damaged by the HOA's approval of the plan, she failed to bring forth

–21–

evidence of the reasonable and necessary costs of any repairs for her home. An objective valuation of services, such as a bill, receipt, or an estimate is sufficient evidence from which one can infer reasonable cost of repair. *See Bernstein v. Thomas*, 298 S.W.3d 817, 826 (Tex. App.—Dallas 2009, no pet.) (multiple estimates from various companies regarding the cost to repair a foundation was sufficient evidence of reasonable cost of repair). Neither her affidavit nor Tolson's affidavit opines on the reasonable and necessary costs of any repairs to her home.

We acknowledge that Beinar argues in her brief that the HOA cited "ripeness—not the measure of Beinar's damages—as the basis for their motions"; however, Beinar is incorrect. While the HOA did in fact join the Deegans' motions, which included the ripeness argument, the HOA's separately filed motions for summary judgment also challenged whether Beinar had been "damaged as a result of any landscaping conducted by Defendant Glen Lakes." Therefore, the HOA properly raised the challenge below for our consideration.

Having considered the evidence, we conclude the trial court properly granted the HOA's no-evidence motion for summary judgment as to Beinar's negligence claim because she failed to bring forth evidence that the HOA caused any damage to her property and failed to support any alleged damage with reasonable and necessary costs of repair.

The above analysis likewise disposes of Beinar's cause of action under the Texas Water Code. Section 11.086 requires a showing of diversion or impoundment of surface water causing damage to the landowner's property. TEX. WATER CODE ANN. § 11.086(a). Because Beinar failed to bring forth any evidence of damages caused by the HOA to her property, the trial court properly granted the HOA's no-evidence motion for summary judgment as to her Texas Water Code claim. Having affirmed the trial court's no-evidence motion for summary judgment, we need not address the merits of the HOA's traditional motion for summary judgment as to these claims . TEX. R. APP. P. 47.1; *see Dean A. Smith Sales, Inc.* 397 S.W.3d at 307.

**Take Nothing Judgment**

After granting summary judgments in favor of the Deegans and the HOA, the trial court entered take nothing judgments. In her sixth issue, Beinar argues that if her claims were not ripe, the proper remedy was dismissal without prejudice for want of jurisdiction, not a take nothing judgment. *See, e.g, Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000) (dismissing for want of jurisdiction plaintiffs' claims that were not ripe). The Deegans respond the issue is not preserved, and the trial court did not grant summary judgment on the basis of ripeness.

We first address whether the issue is preserved for our review. The Deegans rely on *Dueitt v. Arrowhead Lakes Property Owners, Inc.*, 180 S.W.3d 733 (Tex. App.—Waco 2005, pet. denied) for the proposition that a party waives error as to an improper dismissal with prejudice or a take nothing judgment if the error is not presented to the trial court. We do not find *Dueitt* persuasive. That case involved the trial court's order taxing costs against the claimants in connection with a dismissal for want of prosecution as opposed to rendering judgment on jurisdictional grounds. It is well-settled that jurisdictional issues, including ripeness, may be raised for the first time on appeal. *See Gibson*, 22 S.W.3d at 350; *see also Lane v. Baxter Healthcare Corp.*, 905 S.W.2d 39, 42 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding party did not waive its right to appeal dismissal for want of jurisdiction with prejudice when the argument was not first raised to the trial court because "jurisdictional matters can be raised for the first time on appeal"). Thus, whether the trial court erred by entering a take nothing judgment is preserved for our review.

We now address whether the entry of a take nothing judgment implies the trial court did not grant the Deegans' motions based on lack of ripeness. In a single sentence, the Deegans assert, "First and foremost, the trial court rendered a take nothing judgment against Beinar and,

therefore, did not grant the motions based on lack of ripeness." They then cite *Hirschfeld Steel Co. v. Kellogg Brown and Root, Inc*., 201 S.W.3d 272, 278 (Tex. App.—Houston [14th Dist.] 2006, no pet.) and quote from the opinion, "Because the trial court dismissed the claims with prejudice, it does not appear that the trial court concluded it lacked jurisdiction under the ripeness doctrine."

In *Hirschfeld*, the summary judgment movants argued the trial court lacked subject matter jurisdiction because the declaratory judgment claims were not ripe and, in the alternative, they failed on the merits. *Id*. The trial court granted summary judgment without specifying the grounds. *Id*. While it appeared the trial court concluded it did not lack jurisdiction under the ripeness doctrine, the appellate court further noted "it is possible the trial court found a lack of ripeness and rendered an improper judgment based on its determination." *Id*.

Here, the Deegans' no-evidence motion for summary judgment specifically stated they were entitled to summary judgment on Beinar's negligence claim because "Plaintiff's claim is not Ripe." This is the only summary judgment ground they presented on their negligence claim to the trial court; therefore, when the trial court ordered a take nothing judgment against Beinar, the trial court clearly granted it based on ripeness. Unlike *Hirschfeld*, there was no alternative ground before the trial court to consider. Accordingly, after the trial court determined the negligence claim was not ripe, it lacked subject matter jurisdiction. As such, the appropriate procedural measure was for the trial court to dismiss the negligence claim for want of jurisdiction. *See Gibson*, 22 S.W.3d at 350.

The Deegans' no-evidence motion for summary judgment also specifically stated they were entitled to summary judgment on Beinar's breach of contract claim because "Plaintiff's claim is not ripe." We acknowledge that the Deegans also stated "there is no showing that a contractual relationship exists between the Deegans and Plaintiff"; however, the entirety of their

–24–

argument focused on why Beinar's contract claim was not ripe rather than arguing the essential elements of a contract claim for which she presented no evidence. Thus, like the negligence claim, we are persuaded that the trial court granted the Deegans' no-evidence motion for summary judgment on Beinar's contract claim because the claim was not ripe. As such, the trial court should have dismissed the claim for want of jurisdiction. Accordingly, Beinar's sixth issue is sustained as to the Deegans. We vacate the trial court's September 6, 2012 order granting the Deegans' no-evidence motion for summary judgment as to Beinar's negligence and contract claims and dismiss those claims without prejudice for want of jurisdiction. In all other respects, the judgment of the trial court is affirmed.

As to the HOA, because Beinar's causes of action were ripe and the trial court properly granted the HOA's no-evidence motion for summary judgment, entry of a take nothing judgment was appropriate. Thus, her sixth issue is overruled as to the HOA.

### Conclusion

Having considered Beinar's issues, we vacate the trial court's September 6, 2012 order granting the Deegans' no-evidence motion for summary judgment as to Beinar's negligence and contract claims and dismiss those claims without prejudice for want of jurisdiction. In all other respects, the judgment in favor of the Deegans is affirmed.

The trial court's September 6, 2012 order granting the HOA's no-evidence motion for summary judgment is affirmed.


/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

121616F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PAMELA A. BEINAR, Appellant

No. 05-12-01616-CV      V.

MICHAEL J. DEEGAN, ELIZABETH F.
DEEGAN, AND GLEN LAKES
HOMEOWNERS' ASSOCIATION, INC.,
Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-02783.
Opinion delivered by Justice O'Neill.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, we **VACATE** the trial court's September 6, 2012 order granting appellees Michael J. Deegan and Elizabeth F. Deegan's no-evidence motion for summary judgment as to appellant Pamela A. Beinar's negligence and contract claims and **DISMISS** those claims without prejudice for want of jurisdiction.   In all other respects, the judgment in favor of appellees Michael J. Deegan and Elizabeth F. Deegan is **AFFIRMED**.

The trial court's September 6, 2012 order granting Glen Lakes Homeowners' Association, Inc.'s no-evidence motion for summary judgment is **AFFIRMED**.

It is **ORDERED** that the parties each bear their own costs of this appeal.

Judgment entered this 20th day of March, 2014.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE