

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00393-CV
_____

MAGDALENA SANCHEZ MCMORDIE, IN HER CAPACITY AS BENEFICIARY AND CO-TRUSTEE OF THE HOBART B. MCMORDIE, II ASSET MANAGEMENT TRUST, APPELLANT

V.

CHARLES HARRIS MCMORDIE, IN HIS CAPACITY AS CO-TRUSTEE OF THE HOBART B. MCMORDIE, II ASSET MANAGEMENT TRUST, APPELLEE

_____

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 66,482-C, Honorable Ana Estevez, Presiding

_____

July 24, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

This appeal involves the interpretation of a trust agreement (that is, the Hobart B. McMordie, II Asset Management Trust) via an action for declaratory judgment. The litigants, Magdalena Sanchez McMordie (Magdalena) and Charles Harris McMordie (Charles), were co-trustees who disagreed about what the provision in question meant. The final judgment before us arose from cross-motions for summary judgment. Neither

litigant was completely satisfied with the outcome, and both appealed. After reviewing the briefs, record, and authorities, we modify the judgment.

*Background*

Magdalena's husband, Hobart B. McMordie, II, executed the Hobart B. McMordie, II Asset Management Trust on November 1, 2004. The corpus of the trust was comprised of Hobart's property. Additionally, he and his wife Magdalena Sanchez McMordie were designated its beneficiaries and original co-trustees. Alternate trustees were also specified if a trustee failed to serve. Those alternates consisted of Marie McCormick and Charles.

Hobart died in 2010. At that point, the trust became irrevocable by its own terms. His death also caused Marie McCormick to become a co-trustee with Magdalena. Charles succeeded Marie in 2013. Thereafter, the dispute at bar arose. The portion of the trust document underlying the dispute appears at Article VI, paragraph B. It provides that:

> The Trustees shall distribute income and principal of the Trust at such times and in such amounts as demanded by HOBART B. McMORDIE during the term of the Trust. Any undistributed income on hand in the Trust at the end of each calendar year shall be added to the principal of the Trust for that year and either Beneficiary may make demands anytime thereafter to receive said income. If MAGDALENA SANCHEZ survives HOBART B. McMORDIE, the Trustees shall distribute all the income at least annually to her and shall, at Trustees' sole discretion, distribute principal to her to provide for her health, support and maintenance in the standard of living to which she is accustomed at the death of HOBART B. McMORDIE . . . . Any distribution to a Beneficiary . . . whether income or principal, shall be the separate property of such Beneficiary. The Trustees, at the request of either Beneficiary, shall sell or convert any unproductive property in the Trust and make such property productive of income within a reasonable time after such request.

The trust terms further specified that it was to terminate upon the "death of the last surviving Beneficiary." When that occurred, Hobart's nephews (or their descendants should they predecease the last beneficiary) were to receive the trust corpus. Charles happened to be one of the nephews.

The controversy before us involves a twofold issue. The first question concerned whether Magdalena was entitled to any income accumulated by the trust but undistributed during the life of Hobart. The second query pertained to whether that accumulated income was payable to Magdalena upon her "demand." Charles's reading of the trust document purportedly led him to believe that "no" was the appropriate answer to both issues. Magdalena disagreed.

Upon entertaining cross-motions for summary judgment, the trial court effectively declared that the accumulated income did not become principal of the trust and that Magdalena had a right to demand the previously accumulated income. Yet, her right to demand the accumulated income did not come with the right to receive that income upon demand, according to the trial court. Apparently, it could be paid only if both she and Charles, as co-trustees, agreed to its distribution.

*Authority*

Needless to say, we review summary judgments *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). And, given that the controversy encompasses little more than the interpretation of a writing (that is, a trust agreement), we need not defer to the trial court's construction of the instrument. Indeed, interpreting a document constitutes a question of law that we resolve *de novo.*

3

*Mathis v. Carter*, No. 07-07-0390-CV, 2009 Tex. App. LEXIS 283, at *2-3 (Tex. App.—Amarillo January 15, 2009, no pet.) (mem. op.).

Next, and as done when construing all written instruments, we interpret the trust document by attempting to garner the intent of the person who created it, as that intent is expressed within the four corners of the document. *Id.* That process obligates us to harmonize the terms of the instrument, give effect to all of its parts, and avoid rendering any provision meaningless. *Id.*; *accord Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (stating the same). The rules of construction also mandate that we accord to the words used in the instrument their ordinary and generally accepted meaning, unless the writing evinces a contrary intent. *JAW The Point L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597 (Tex. 2015). With that said, we turn to the trust instrument and dispute before us.

Reading Article VI, paragraph B we make several initial observations. First, Hobart, himself, had the authority to demand and receive payment of either or both the trust income and principal at his discretion. The directive that the "Trustees shall distribute income and principal of the Trust at such times and in such amounts *as demanded by Hobart B. McMordie* during the term of the Trust" evinces no other reasonable interpretation. (Emphasis added). Magdalena had no power to demand distribution of both the income and principal.

Second, not all the income earned by the trust in any particular year had to be distributed. This is illustrated by the phrase stating that "[a]ny undistributed income on hand in the Trust at the end of each calendar year shall be added to the principal of the

4

Trust for that year . . . ." If all the income had to be distributed, then there would be no undistributed income as contemplated by the passage.

Third, Magdalena had the right to demand that she receive undistributed income; Hobart did not have the sole power to do that. We garner as much from the phrase that "*either Beneficiary* may make demands anytime thereafter to receive said income." (Emphasis added). Because Magdalena was one of the two beneficiaries named in the instrument, she fell within the category of "either Beneficiary."

Fourth, that a demand for undistributed or accumulated income could be made even though the income had been added to the principal evinces that Hobart intended for the undistributed income to maintain its character as income, at least for purposes of "either" beneficiary making a demand to receive it. In other words, its inclusion in the principal did not somehow strip a beneficiary's ability to demand receipt of it.

Fifth, we further note an absence of any deadline in the verbiage describing either beneficiary's right to demand receipt of undistributed income. Indeed, Hobart used the phrase "anytime thereafter" when specifying the period in which such a demand for its receipt could be made. Again, we must afford words their ordinary meaning, and "anytime" means "anytime" or "whenever." *Anytime Definition,* DICTIONARY.COM, http://www.dictionary.reference.com/browse/anytime (last visited July 15, 2015). In turn, "thereafter" means "afterward" and refers to the point in time when undistributed income for the year is added to the trust principal. *Thereafter Definition,* DICTIONARY.COM, http://www.dictionary.reference.com/browse/thereafter (last visited July 15, 2015). Combining these definitions leads us to reasonably infer that Hobart intended not only that the right to demand receipt of the accumulated income had no

5

end but also that the right could be exercised once the income had been undistributed and added to the principal.

With those observations in mind, we next turn to Charles's argument that despite a beneficiary's demand for payment of the accumulated income, it could not be distributed unless both trustees acquiesced. Obviously the trial court agreed with Charles when it held that "[n]o beneficiary can unilaterally compel the distribution of undistributed income <u>solely by making demand</u>." (Emphasis in original). Yet, in drafting the trust instrument, Hobart did not simply say that the beneficiaries could demand the income. He wrote that once the income was accumulated, a beneficiary "may make demands anytime thereafter *to receive* said income. (Emphasis added). The ordinary or generally accepted definition of "to receive" encompasses such concepts as "to come into possession," *Receive Definition,* MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/receive (last visited July 15, 2015), and to "be given, presented with, or paid." *To Receive Definition,* OXFORD DICTIONARIES, http://www.oxforddictionaries.com/us/definition/american_english/receive?q=to+receive (last visited July 15, 2015). If one trustee could ignore the demand and block distribution, as suggested by Charles, then the beneficiary would lack the ability to "come into possession of" or "be given, presented with, or paid" the income demanded.

To the foregoing, we add another observation. It pertains to the absence of any reference to the trustees having discretion in responding to the demand. Such a limitation appeared elsewhere in Article VI, paragraph B. For example, Hobart specified that the distribution of principal once he died was to lie within the "Trustees' sole discretion," This circumstance suggests that had Hobart wanted to condition the

delivery of the accumulated income upon the exercise of the trustees' discretion, he knew how to do that. And, because he said nothing about a trustee exercising discretion when stating that a beneficiary could demand to receive the accumulated income, we must forego the opportunity to add something that he omitted.[1] *See Weaver v. Jamar*, 383 S.W.3d 805, 811 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (stating that a court cannot rewrite a document under the guise of interpreting it).

Hobart's directive connotes much more than simply demanding; it includes receiving once the demand was made. And, the entitlement to receive that income necessarily implies an obligation on the trustees to deliver it once demanded. Adopting Charles's interpretation of the passage would effectively strip the phrase "to receive" of meaning, and we cannot approve of that outcome if the rules of construction are to be followed. Consequently, Hobart's directive saying that "either Beneficiary may make demands anytime thereafter to receive said income" means 1) the undistributed income remains subject to those demands despite being added to the principal, 2) the beneficiary has the right to demand payment of undistributed income whenever he or she cares to, and 3) the trustees must distribute accumulated income upon a beneficiary's demand. To the extent the trial court held otherwise, it erred. To the extent that the error permits a trustee to thwart Hobart's intent, it is harmful.

Via his last issue, Charles contends the trial court erred in sustaining objections to portions of his affidavit tendered in support of his motion for summary judgment. The

---

[1] We also reject the argument that once added to the principal, the income became principal subject to distribution at the trustees' discretion. As previously discussed, while accumulated income was added to the trust principal, it nonetheless remained identifiable as income for purposes of distribution upon the demand of a beneficiary. If this was not so and if it simply became principal, then there would be no "undistributed income" to fulfill the demand by a beneficiary. In other words, undistributed income maintained a separate identity from principal in general with regard to a beneficiary's demand to receive that income.

7

trial court apparently excluded the affidavits, or portions thereof, because they consisted of legal conclusions.[2]  To show that it erred, though, Charles merely posited before us that:

> The portions of the affidavit that Mrs. McMordie objected to constituted competent summary judgment evidence such that they should not have been excluded from the summary judgment record.  It is inconceivable how affidavit testimony concerning the parties' competing requests for declaratory relief and the bases on which same are requested is an irrelevant legal conclusion . . . .  Additionally, the factual statement contained in Paragraph 10 of the affidavit concerning the amount of Trust income received by Mrs. McMordie is relevant to establish that all income has been distributed to her . . . .  Accordingly, the Trial Court's Final Judgment sustaining Mrs. McMordie's objections to the affidavit should be reversed.

Missing from this argument is discussion about why "testimony concerning the parties' competing requests for declaratory relief and the bases for same" and "the factual statement . . . concerning the amount of Trust income received by" Magdalena are relevant to the meaning of Article VI, paragraph B.  No one contended that, nor did we find, the provision was ambiguous.  Thus, its interpretation had to be conducted by us through viewing only the words contained within four corners of the trust instrument.  What others may have thought it meant or what income Magdalena received from the trust mattered not given that they fell outside the words contained within the four corners of Hobart's trust.

In sum, we overrule Charles's issues.  We sustain Magdalena's issue attacking the trial court's interpretation of Article VI, paragraph B so as to prevent Magdalena from receiving the undistributed income upon her demand for it.  We also reverse the trial

---

[2] We do not see in the record where Charles objected to the court's ruling on the objections to his summary judgment evidence.  The failure to do so generally waives any complaint.  *Beinar v. Deegan*, 432 S.W.3d 398, 403 (Tex. App.—Dallas 2014, no pet.); *Southwestern Bell Tel. Co. v. Combs*, 270 S.W.3d 249, 273 (Tex. App.—Amarillo 2008, pet. denied).

court's judgment to the extent it held that a beneficiary's demand for receipt of undistributed income under Article VI, paragraph B of Hobart B. McMordie, II Asset Management Trust did not obligate its trustees to comply with and satisfy that demand. We modify the judgment to read that the language within paragraph B, Article VI stating that "either Beneficiary may make demands anytime thereafter to receive said income" means 1) the undistributed income remains subject to the demand of a beneficiary even though previously added to the trust principal, 2) the beneficiary has the right to demand payment of undistributed income whenever he or she cares to, and 3) the trustees must distribute that income upon a beneficiary's demand. So modified, the judgment is affirmed.


Brian Quinn
Chief Justice