**Affirmed and Memorandum Opinion filed August 31, 2023.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-22-00013-CV**

---

**TENARIS BAY CITY INC., Appellant**

**V.**

**RICKY ELLISOR; JOSE L. AVILA; WILLIAM JOHNSON; ELIZABETH JOHNSON; MATTIE HALBISON, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JAMES HALBISON; DORENE TABARES, INDIVIDUALLY AND AS HEIR AT LAW TO ARMANDO TABARES; ARMANDO GARCIA, FOR THE ESTATE OF MARIA GARCIA; RAQUEL SOLIS; SAMUEL TREVINO; GLORIA TREVINO; DONNIE WEST; GLORIA WEST; ELLA ALLINIECE; JOSEPH HUERTA; RICHARD ALVARADO; CAROLYN ALVARADO; SANDRA JOYNER; CLAYTON JOYNER; WILLIAM JAHNSEN; SUE JAHNSEN; HELEN PADILLA; RUDY PADILLA; GUY SNYDER; DAVID STORY; DEBORAH STORY; SAMUEL FRANKSON; SUSAN FRANKSON; JAMES FRANKSON; LARRY FORD; AND KIMBERLY DAVIS, Appellees**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2018-71970**

---

**MEMORANDUM OPINION**

Appellant Tenaris Bay City Inc. challenges the jury verdict in favor of appellees—a group of 30 property owners—on their negligence claims relating to the flooding of their homes during Hurricane Harvey.[1] In five issues on appeal, Tenaris argues: (1) there is legally- and factually-insufficient evidence to support the jury's finding on causation; (2) the trial court erred by allowing appellees' expert to testify regarding causation; (3) there is legally- and factually-insufficient evidence to support the jury's finding that the water at issue was "surface water," as opposed to "flood water"; (4) the trial court erred by refusing to include Tenaris's requested proximate-cause and flood-water instructions; and (5) the trial court erred by striking Tenaris's designation of a responsible third party. We affirm.

## I.    BACKGROUND

In August 2017, Hurricane Harvey hit Texas and caused significant damage and flooding to areas all over the state, including—as is relevant to this appeal—Matagorda County. In October 2018, appellees filed suit against appellant Tenaris, Fluor Enterprises Inc., and Jones & Carter Inc., alleging that the drainage system designed for and constructed by Tenaris was responsible for the flooding damage to their homes.

Tenaris was the owner and operator of a seamless-pipe manufacturing

---

[1] Appellees consist of the following individuals: Ricky Ellisor; Jose L. Avila; William Johnson; Elizabeth Johnson; Mattie Halbison, individually and as representative of the estate of James Halbison; Dorene Tabares, individually and as heir at law to Armando Tabares; Armando Garcia, for the estate of Maria Garcia; Raquel Solis; Samuel Trevino; Gloria Trevino; Donnie West; Gloria West; Ella Alliniece; Joseph Huerta; Richard Alvarado; Carolyn Alvarado; Sandra Joyner; Clayton Joyner; William Jahnsen; Sue Jahnsen; Helen Padilla; Rudy Padilla; Guy Snyder; David Story; Deborah Story; Samuel Frankson; Susan Frankson; James Frankson; Larry Ford; and Kimberly Davis.

facility, which the appellees allege caused the flooding of their homes. The facility had previously been a sod farm, but before building its facility on the property, Tenaris hired Fluor, an international engineering firm, to design the site's drainage plan in accordance with the applicable laws and regulations necessary for the effective displacement of water as runoff to the surrounding homes. Jones & Carter was hired by the Matagorda County Drainage District to detail any concerns of the drainage plan before issuing a permit. Against Fluor, appellees brought claims for negligence and gross negligence, in addition to a claim for negligence per se for violations of the Water Code; against Tenaris, appellees brought claims for negligence, gross negligence, negligence per se, and negligent nuisance.[2]

Tenaris designated Milberger as a responsible third party.[3] Appellees filed a motion to strike the designation, arguing there was no evidence of any negligence attributable to Milberger. The trial court granted the motion to strike.

The case proceeded to trial with the remaining parties. The first phase was to address liability in which the parties agreed to divide the properties at issue into three geographic zones: Zone A, Zone B, and Zone C. The trial court granted a directed verdict in favor of Tenaris and Fluor on the appellees' claims of gross negligence as to all zones. The jury, however, returned a verdict in favor of appellees, finding Tenaris liable for negligence, negligent nuisance, and negligence per se violations of the Water Code for all three zones; the jury also found Fluor liable for negligence for Zone C. Fluor settled with appellees on the Zone-C claim.

---

[2] Against Jones & Carter, appellees brought claims for negligence and gross negligence, but they settled with plaintiffs before trial began.

[3] Milberger refers collectively to Milberger Turfgrass, LLC; Bryan M. Milberger Trust 2-1-1994; Francis Wayne Milberger Trust 2-1-1994; and Arthur J. Milberger Trust 2-1-1994. Arthur testified at trial that before the Tenaris facility was built, the land was a "turf farm" owned by Milberger. The record reflects some individuals still referred to the area in which Tenaris was located as the "Milberger Farm."

Tenaris and appellees entered into a stipulated agreement that the damages for all three zones was $2,800,000, removing the need for a trial on damages. Tenaris filed a motion for judgment notwithstanding the verdict to disregard the jury's findings and requested a new trial on the basis that the evidence was insufficient to support the jury's findings. Tenaris argued that the plaintiffs did not establish sufficient evidence to prove the substantial-factor element for proximate causation. In a related argument, Tenaris asserted that the trial court erred in permitting appellees' expert to testify regarding Zone C when the expert was previously on record admitting that he had not done the proper analysis to form opinions regarding that geographic zone. Further, Tenaris argued that it owed no duty to appellees because the water outflowing from Tenaris's property was "flood water," as opposed to "surface water," and only the State of Texas has a duty to control flood water.

Alternatively, Tenaris argued that if there was sufficient evidence to hold Tenaris liable, then there must have been sufficient evidence to support a finding of liability against Milberger, as well. Accordingly, Tenaris argued that the trial court erred by striking their designation of a responsible third party.

However, because the trial court never ruled on Tenaris's motion for judgment notwithstanding the verdict, it was denied as an operation of law. *See* Tex. R. Civ. P. 329b(c).

## II. ANALYSIS

### A. Legal and factual sufficiency of proximate causation

In its first issue, Tenaris argues that the evidence was legally and factually insufficient to support the jury's proximate-cause finding.

#### 1. Standard of review and applicable law

4

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22, 827 (Tex. 2005); *see also Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *Id.* at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement." *Id.*

We apply this standard mindful that this court is not a factfinder. *See Turner v. Ewing*, 625 S.W.3d 510, 518 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)). The factfinder is the sole judge of the witnesses' credibility and the weight afforded their testimony. *Turner*, 625 S.W.3d at 518. "Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation." *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729, 733 (Tex. 1984). But expert testimony related to causation is required when an issue involves matters beyond jurors' common understanding. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006).

To prevail on a negligence claim, a plaintiff must prove the existence of: (1) a legal duty; (2) a breach of that duty; (3) proximate causation; and (4) damages. *See Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 607 (Tex. 2016). Proximate causation incorporates two sub-elements: cause-in-fact (or

"substantial factor") and foreseeability. *See Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 222 (Tex. 2010). "Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id.* at 222–23.

Foreseeability, the other element of proximate cause, requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

## 2. Application

To determine whether the jury's finding on proximate causation was supported by legally-sufficient evidence, we start by considering the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support finding proximate causation. *City of Keller*, 168 S.W.3d at 821–22.

At trial, appellees called Gabriel Novak—a civil engineer—as an expert to testify regarding Tenaris's water drainage system and to his opinion regarding what caused appellees' homes to flood. According to Novak, Tenaris's water drainage system was designed to temporarily hold storm water until it could be safely released into the surrounding area; to accomplish that goal, the drainage system, as designed by Fluor, was supposed to consist of three general detention ponds and a 44-foot-high berm surrounding the perimeter of the detention ponds.[4] Novak and Tenaris's own experts testified that the water-drainage system, as designed, would be sufficient to prevent the volume of water generated by a hundred-year storm from escaping Tenaris's property and flooding appellees'

---

[4] A "berm" is a "narrow shelf, path, or ledge typically at the top or bottom of a slope"; a berm can also be "a mound or wall of earth or sand." *See Merriam-Webster*, https://www.merriam-webster.com/dictionary/berm (last visited Jun. 23, 2023).

6

properties.[5]

However, Novak claimed that Tenaris's water-drainage system failed to meet the specifications in Fluor's design plans. Relying on his on-site visit and pictures admitted at trial, Novak asserted that Tenaris's berm wall was lower than 44 feet in some areas and that the berm had holes in it at an elevation of 43 feet. Based on his calculations and the model testing he performed, Novak testified that that once the storm water reached the water-surface elevation of the holes, the storm water would flow through the holes into the surrounding area, causing flooding. Novak opined that the berm, as built, would not and could not operate as designed.

Charles Kalkomey, an engineer for Matagorda County, testified that the Matagorda County Drainage District received multiple complaints regarding drainage in the Tenaris facility area before the facility was even constructed. Kalkomey reached out to Tenaris to address the drainage issues, but to the best of his knowledge, Tenaris never addressed those drainage issues.

Michael Pruett, one of the directors of the Drainage District, testified regarding flooding problems with the Tenaris facility: "[I]t was all on the engineering drawings, there w[ere] problems with that to start with. . . . I just know there's problems with people getting flooded out there since that facility—when a million-plus square feet of building was placed on that place." In addition, several of the appellees also testified that over the last seventy years, their homes had never flooded—despite being hit by other severe storms—before the Tenaris

---

[5] A "hundred-year storm" was defined at trial as an excess of 13.55 inches of rain falling in a 24-hour period. Lee Branscombe, a hurricane expert, testified that the Bay City and Van Vleck areas, the cities where appellees live, only received approximately 21.6 inches of rain during a four-day period. Thus, Branscombe opined that specifically as it affected Matagorda County, Hurricane Harvey would be classified a twenty-year storm.

facility was constructed.

Tenaris, through its own experts, provided evidence and testimony that its facility exceeded Fluor's design plans in some respects; for example, Tenaris claimed that the berm was higher than 44 feet in some areas. Johnathan Johnson, Tenaris's maintenance manager, testified that he was on-site, driving along the berm, during the storm; Johnson testified that he never saw storm water overflowing from the facility. He further claimed that if water had overflowed from the detention ponds, his office and the visitor center would have flooded, but they never flooded.

Tenaris's engineering expert Jill Trevino testified that according to her reviews of the "as-built" drawings of the facilities, the berm was built according to design specifications and contained no holes. Thus, she opined that Tenaris did not cause the flooding because no storm water would have escaped the Tenaris facility. However, she performed no modeling, mapping, or surveying of the area.

On appeal, Tenaris's legal sufficiency challenge largely hinges on the following conversation that occurred between Tenaris's counsel and Novak:

| [Q]: | Okay. But you haven't, have you? |
| [A]: | Done a detailed analysis of any of the specific plaintiff's homes? |
| [Q]: | Right. |
| [A]: | No, I have not. |
| [Q]: | In fact, you haven't don[e] a general flooding analysis at all about what happened in Van Vleck, Texas, have you sir? |
| [A]: | No, I have not. |
| [Q]: | All you have looked at, sir, is to grade the papers of Fluor and Jones and Carter, right? |

[A]:     Yes.

[Q]:     Okay. And so if the jury [is] going to be asked: Hey what caused these poor folks to have their homes flooded during Hurricane Harvey, you actually can't answer that question, can you?

[A]:     As far as to the specific homes?

[Q]:     Yes, sir.

[A]:     No, I cannot answer that question.

Thus, according to Tenaris, there is insufficient evidence on causation because appellees' expert admitted that he could not opine on causation. However, during re-direct, when questioned by appellees' counsel, Novak testified as follows:

[Q]:     Mr. Novak, based on your education, work experience, and your modelling, have you — do you have an opinion based on a reasonable degree of engineering probability whether or not the storm water drainage design plan as written by Fluor, and as implemented by Tenaris was a substantial factor in bringing about the flooding to plaintiffs' properties?

[A]:     My opinion is that the failure of the Fluor design and its implementation was a factor in the flooding of the plaintiffs' properties.

It does not matter that Novak gave allegedly conflicting opinions on causation because it is the province of the jury to resolve conflicts in the evidence, and when reasonable jurors could resolve conflicting evidence either way, we presume they did so in accordance with the verdict. *See City of Keller*, 168 S.W.3d at 820. Even though Novak stated he could not opine on causation as to each of appellees' specific homes, he later testified that Tenaris's failure to implement Fluor's design plans was a substantial factor in the flooding of appellees' properties.

In its supplemental briefing, Tenaris argues that this was a case that required expert testimony on causation because it involved complex issues beyond the jurors' common understanding.[6] *See Mack Trucks*, 206 S.W.3d at 583. Thus, Tenaris asserts the evidence is legally insufficient because appellees' expert did not specifically testify regarding substantial causation. In analyzing this argument, we find it helpful to imagine cases involving experts on a spectrum. On one end of the spectrum are cases in which an expert is always required. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (requiring expert report in health-care-liability claims). On the other end of the spectrum would be cases in which experts are almost never required; for example, a party would not need an expert to testify regarding causation in a simple slip-and-fall tort case. In the middle of the spectrum, are cases that might or might not require an expert, depending on the complexity of the case.

Although not binding, we note that our sister court has concluded that flooding causation tends to fall in the middle of the spectrum: "Regardless of whether an expert is required to testify specifically about the natural flow of surface water based on measurements of elevation, it is not always necessary to have expert testimony to establish flooding and its causes." *Michaelski v. Wright*, 444 S.W.3d 83, 95 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We must then determine if the present case was complex enough to require an expert, and we disagree with Tenaris's assertion that the current case involves complex facts and issues beyond the jurors' common understanding.

This case is unlike the many others in which expert testimony was held to be

---

[6] We note that in determining the alleged complexity of the case and its issues, knowing the distance between Tenaris and appellees' homes might have been helpful. However, the distance between Tenaris and the appellees' homes is unclear from the record and the appellate briefs, and Tenaris does not otherwise indicate precise proximity.

required. *See, e.g.¸ Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) (concluding that expert testimony on causation is generally required in legal malpractice cases because "the wisdom and consequences of these kinds of tactical choices made during litigation are generally matters beyond the ken of most jurors"); *Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713 (Tex. 1966) (holding that, when coupled with insufficient expert testimony, lay testimony and factual circumstances did not establish that injury aggravated existing cancerous tumor); *Rayner v. Claxton*, 659 S.W.3d 223, 255 (Tex. App.—El Paso 2022, no pet.) ("The physics involved in determining the distance at which it would take a truck at that weight to stop, combined with the mechanical knowledge about the brakes' functionality and the effects of the braking violations noted by the officers, are not matters within 'a layperson's general experience and common understanding' where lay testimony can provide adequate proof of causation."); *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 894 (Tex. App.—Texarkana 2004, pet. denied) (observing that chemical exposure cases generally require expert testimony on causation because "medically complex diseases and causal ambiguities compound the need for expert testimony"); *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding expert testimony required because decedent contracted bronchiolitis obliterans organizing pneumonia (BOOP), which has "several possible causes and is idiopathic a third of the time").

Just because expert testimony might be helpful or available does not mean that it is necessary. While it might be beyond the common understanding of jurors to comprehend the natural flow of water or the engineering behind the storm-drainage system, it is within their understanding to reason that if Tenaris's facility overflowed, it would cause flooding on nearby properties. Stated

11

differently, the combined lay testimony and evidence in this case was sufficient to establish a sequence of events which provides a strong, logically traceable connection between Tenaris's negligence and the flooding of appellees' properties. *Morgan,* 675 S.W.2d at 733. It is also worth noting that Tenaris does not point us to any part of the record where it notified the trial court of its contention that expert testimony was specifically required on causation.

Ultimately, the jury heard conflicting evidence regarding causation, and it reasonably could have believed Novak's testimony over Tenaris's experts. *See Gunn v. McCoy*, 554 S.W.3d 645, 665 (Tex. 2018) (agreeing with court of appeals that legally-sufficient evidence existed to support finding of proximate cause when jury was presented with conflicting testimony from various experts). Viewed in the light most favorable to the appellees, we hold there was legally sufficient evidence to support the jurors' finding that Tenaris was a substantial factor in bringing about appellees' harm.

Regarding foreseeability, Tenaris argues that Hurricane Harvey was an act of God, and thus, inherently unforeseeable. However, even though Hurricane Harvey itself was not foreseeable, it is perfectly foreseeable that a negligently built storm-drainage system will cause flooding issues in nearby properties. This is especially true when flooding was a known issue in the area of the Tenaris facility, even before the facility was constructed. Thus, we conclude there was legally-sufficient evidence of foreseeability. *Doe*, 907 S.W.2d at 478.

Regarding factual sufficiency, we cannot conclude that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003). As detailed above, the jury was presented evidence from multiple experts regarding causation. The jury also heard testimony from multiple homeowners in

the area, all testifying that their homes had never flooded during prior hurricanes; their homes only flooded once the Tenaris facility was constructed. Accordingly, we conclude that the evidence was legally sufficient to support the jury's finding and not factually insufficient as to require a new trial.

We overrule issue 1.

## B.      Exclusion of expert testimony

In issue 2, Tenaris argues that the trial court should have excluded Novak's testimony regarding Zone C because in his original deposition, he acknowledged that he had not performed a specific analysis for the Zone-C properties. Thus, Tenaris claims that his testimony should have been excluded as an undisclosed expert opinion. However, we find the cases that Tenaris relies on to be unpersuasive.

A trial court's admission or exclusion of expert testimony is reviewed for an abuse of discretion. *Gunn*, 554 S.W.3d at 666. A trial court abuses its discretion by failing to follow guiding rules and principles. *Id.* To reverse a trial court's judgment based on the exclusion of evidence, we must conclude that the trial court did in fact commit error and the error was harmful. *Id.* (citing *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989)).

A party's duty to supplement written discovery regarding a testifying expert is governed by Texas Rule of Civil Procedure 193.5. Tex. R. Civ. P. 193.5. Under that rule, the duty to supplement or amend arises when a party learns that its previous responses to written discovery were incomplete or inaccurate when made or are no longer complete or correct. Tex. R. Civ. P. 193.5(a). Courts have held that "[a] last minute, *material* alteration in the expert's testimony is just as damaging as the complete failure to list an expert." *Collins v. Collins*, 904 S.W.2d

13

792, 801 (Tex. App.—Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex. 1996) (emphasis added).

Tenaris cites to cases such as *Beinar v. Deegan* for the proposition that expert testimony at trial that materially varies from pre-trial disclosures should be excluded. *Beinar*, 432 S.W.3d 398, 404 (Tex. App.—Dallas 2014, no pet.). And while *Beinar* is not controlling on our court, it is also distinguishable from the present case. In *Beinar*, the suit involved damages to the plaintiff's home allegedly caused by defendants' landscaping renovations. *Id.* The plaintiff's expert initially concluded that "the foundation movement and deflections measures is not of a large magnitude at this time" and was considered "typical for a home of this age and construction." *Id.* at 403. He also originally disclosed that "[n]o foundation repairs or adjustments are needed." *Id.* But approximately one year later, the expert noted new tension cracks he attributed to the defendants' renovations, and he stated such renovations caused, and will cause in the future, damage to the plaintiff's foundation. *Id.* at 403–04. The court of appeals concluded that the trial court did not err in excluding the expert's opinion because the expert materially altered his opinion. *See id.* at 404–05.

By contrast, in the present case, Novak never materially altered his opinion. According to appellees' original expert designation:

> Mr. Novak will opine on the acceptable standards and practice of storm water management flood controls management in the State of Texas. He will testify that the Hurricane Harvey event as it occurred in Van Vleck and surrounding area was not an act of God, because the amount of rainfall that fell in the area was not unprecedented or extraordinary and, in fact, was foreseeable. Mr. Novak will opine that Plaintiff's properties were damaged due to rainfall runoff, from the Tenaris Bay City facility. Further, Mr. Novak will testify that the Bay City facility's internal drainage and storage system were inadequate, that the hydro—hydrologic study and hydraulic analysis of the facility

14

was inadequate, that the hydraulic—and hydraulic modeling approach used in the design and analysis of the internal drainage system was inadequate and not property developed. And that these acts, errors, and omissions previously listed, failed to meet the applicable standards and resulted in the flooding of plaintiff's homes and properties.

Novak was always of the opinion that the flooding of appellees' properties was caused by Tenaris and that opinion never materially changed. We conclude that the trial court did not err in refusing to exclude Novak's testimony. Tex. R. Civ. P. 193.5(a).[7]

We overrule issue 2.

## C. Surface water

In issue 3, Tenaris argues there was legally- and factually-insufficient evidence that surface water flooded appellees' homes.

### 1. Standard of review and applicable law

"No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." Tex. Water Code Ann. § 11.086(a).

> "[S]urface water" is simply water or natural precipitation diffused over the surface of the ground until it either evaporates, is absorbed by the land, or reaches a bed or channel in which it is accustomed to flow. Consequently, a distinguishing feature of "surface water" is that it is never found in a natural watercourse. A "watercourse" has been judicially defined as having (1) a bank and bed, (2) a current of water, and (3) a permanent source of supply.

---

[7] In a related argument, Tenaris asserts that it was entitled to a new trial because once Novak's testimony is excluded, there is no evidence regarding causation regarding Zone C properties. Because we conclude that Novak's testimony was properly admitted, we do not need to address this argument. Tex. R. App. P. 47.1.

*Dietrich v. Goodman*, 123 S.W.3d 413, 418 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (internal citations omitted). Stated differently, the chief characteristic of surface water is that it "does not follow a defined course or channel and does not gather into or form a natural body of water." *Id.* at 419. Where rain water is under control by a ditch, tank, pond, or pipe, it no longer qualifies as surface water. *Id.*

"In contrast, floodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Texas Woman's Univ. v. Methodist Hosp.*, 221 S.W.3d 267, 278 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (internal citations omitted). The State has the ownership of, and the nondelegable duty to control, floodwaters; thus, if the water that flooded appellees' property is categorized as floodwaters, Tenaris had no legal duty. *See id.*

### 2.    Application

Tenaris argues that while the evidence at trial established that rainwater on Tenaris's property could initially be categorized as surface water, it necessarily must have passed through a natural watercourse before reaching appellees' properties, and thus the surface water was converted to floodwater. We disagree with Tenaris because the relevant inquiry is whether it was surface water at the time of diversion.

Tenaris compares the present case to *Dietrich*, but we find it to be distinguishable. 123 S.W.3d at 418. In *Dietrich,* the plaintiff asserted claims of negligence, trespass, and violation of Water Code section 11.086 against his neighbor who allegedly landscaped around and over a storm sewer on his property, occluding the storm drain and diverting water into the plaintiff's home on a neighboring lot. *Id.* at 416–17. Before the water was diverted, it had been

"concentrated and directed toward the drain by a shallow, but readily visible, natural gully, that extended sixty feet or more into the wooded area." *Id.* at 419–20. We stated that, under the then-existing law, a plaintiff had no cause of action "stemming from the diversion of water contained in a natural watercourse."

In other words, the crucial fact in *Dietrich* was that the surface water had already been travelling in a natural watercourse *before* the defendant diverted it. Our sister court summarized *Dietrich's* conclusion as follows:

> the holding of *Dietrich* is actually limited to the fact that, under section 11.086, a landowner has no cause of action for damages arising from the diversion of a water flowing in a watercourse (in that case, a natural gully) because such waters are no longer diffused surface waters. . . . In sum, nothing in section 11.086 suggests that accumulated rainfall is no longer diffused surface water once it has been, in any way, diverted by artificial means or touched by the hands of man.

*Texas Woman's Univ.*, 221 S.W.3d at 283. The analysis in *Texas Woman's University* focused on the identity of the water at the time it was diverted—not the identity of the water when it flooded the plaintiff's property. *See id.* at 279–83; *see also Good River Farm, LP v. Martin Marietta Materials, Inc.,* No. 1:17-CV-1117-RP, 2023 WL 2904577, at *4 (W.D. Tex. Apr. 11, 2023) ("Because [§ 11.086] contains no requirement that the water be entirely surface water when it reaches the plaintiff's property, the Court will not read in such a requirement where none exists.").

While there was some evidence presented at trial that the water that flooded appellees' properties may have been at least partially categorized as floodwater by passing through a channel after being diverted by Tenaris but before flooding their properties, there was no evidence showing that the water was anything but surface water at the time Tenaris diverted it. *Texas Woman's Univ.*, 221 S.W.3d at 283.

17

Therefore, we conclude that the evidence was legally and factually sufficient to support the jury's finding that Tenaris diverted surface water. *City of Keller*, 168 S.W.3d at 827.

We overrule issue 3.

## D. Jury charge instructions

In issue 4, Tenaris asserts the trial court erred by refusing to include Tenaris's requested proximate-cause and flood-water instructions.

### 1. Standard of review and applicable law

Generally, the trial court has considerable discretion in determining the proper jury instructions, and we will only reverse if the trial court abused its discretion. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). The trial court abuses its discretion if it acts arbitrarily or fails to follow guiding rules and principles. *See id.*

According to Rule 277, the trial court should give "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. An instruction is proper if it "(1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Hawley*, 284 S.W.3d at 856. But if a particular instruction would exaggerate, minimize, or withdraw from the jury's consideration some pertinent evidence, then such instruction is improper. *See Moody v. EMC Servs, Inc.*, 828 S.W.2d 237, 244 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Thus, "a trial court may refuse to give the jury a requested instruction when the instruction is not necessary to enable the jury to render a proper verdict, even if the instruction represents a correct statement of law." *Haynes v. Union Pac. R.R.*, 598 S.W.3d 335, 348 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd).

For this reason, the supreme court has generally advised that a jury charge

for a statutory cause of action should track the statutory language as closely as possible. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) ("The language may be slightly altered to conform the issue to the evidence presented in the case, but a court should not burden a jury with surplus instructions." (internal citation omitted)); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) ("[A] jury charge should track the language of the provision as closely as possible."). "The omission of an instruction is reversible error only if the omission probably caused the rendition of an improper judgment." *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Error in the omission of an issue is harmless "when the findings of the jury in answer to other issues are sufficient to support the judgment." *Id.* at 579-80 (quoting *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex. 1980)).

### 2. Application

#### a. Proximate-cause instruction

As relevant to this appeal, appellees sued Tenaris for common-law negligence, negligent nuisance, and negligence per se for violating the Water Code. For the negligence and negligent-nuisance claims, the jury was instructed as follows concerning proximate causation:

> With respect to the conduct of Tenaris Bay City, Inc. and Jones & Carter "proximate cause" means a cause, unbroken by any new and independent cause, that was a substantial factor in bringing about an injury, and without which cause such injury would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the injury, or some similar injury, might reasonably result therefrom. There may be more than one proximate cause of an injury, but if an act or omission of any person not a party to the suit was the "sole proximate cause" of an injury, then no act or omission of any party could have been a proximate cause.

Tenaris requested that the proximate-cause instruction also be given to the jury for

the negligence-per-se claim for violating Water Code section 11.086, but the trial court denied Tenaris's request; Tenaris objected to its omission.

In question 5 of the jury charge, concerning section 11.086, the jury was asked, "Did Tenaris divert or impound surface water in a manner that damaged Plaintiffs' properties?" The trial court included the following instructions:

> "Surface Water" means water which is diffused over the ground from falling rains or melting snows, and it continues to be such until it reaches some bed or channel in which water is accustomed to flow.

> When rainfall is under control, either by ditches, tanks, ponds or pipes, it is no longer considered surface water.

> The diversion or impounding of surface water, if any, must have caused damages to Plaintiffs' properties and without which cause such injury would not have occurred.

The jury answered, "Yes."

Tenaris claims that the trial court's refusal to include an additional instruction in question 5 regarding proximate cause created a negative inference, such that the jury may have concluded that proximate cause was not part of the causation element of that theory of recovery. We note that the trial court's language closely tracked the language of the statute and the language used in prior case law. *See Texas Woman's Univ.*, 221 S.W.3d at 283; *Dietrich*, 123 S.W.3d at 418. We also observe that Tenaris has not cited any case where the omission of such an instruction was found to be erroneous. The trial court did not err in refusing Tenaris's additional requested instruction on proximate cause.

### b. Water instruction

Tenaris also requested the following instruction regarding surface water and flood water:

> Surface water is distinct from both (i) flood waters and (ii) waters entering or following a defined course or channel. Flood waters are waters that have overflowed a natural water course but remain a

20

continuous part of that original part of the water course. Flood waters are not surface water.

While this represents an accurate statement of law, Tenaris has not demonstrated that such an instruction was necessary to enable the jury to render a proper verdict. *See Haynes*, 598 S.W.3d at 348. The trial court properly instructed the jury regarding surface water and its definition; the trial court's instructions were accurate and tracked the statute and case law. Given the trial court's discretion on this matter, it may have concluded that an additional instruction on flood water may have burdened the jury with surplus instructions. *See Regal Fin.*, 355 S.W.3d at 601. Furthermore, the trial court may have deemed the requested instruction as unnecessary because even though there was evidence that the water may have been categorized as flood water by the time it reached appellees' properties, there was no evidence that the water Tenaris diverted had overflowed a natural water course. Therefore, we conclude the trial court did not err in refusing Tenaris's requested instruction on surface water and flood water.

We overrule issue 4.

**E.      Responsible third party**

In issue 5, Tenaris asserts that the trial court erred by striking its designation of a responsible third party— Milberger Grass Farm.

**1.      Standard of review and applicable law**

To obtain a jury submission on proportionate responsibility, Tenaris needed to establish the following: (1) a duty requiring Milberger to conform to a certain standard of care; (2) the applicable standard of care and its breach by Milberger; (3) resulting injury; and (4) a reasonably close causal connection between appellees' injuries and Milberger's negligence or breach of the standard of care. *See Gunn v. McCoy*, 489 S.W.3d 75, 95 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 554 S.W.3d 645 (Tex. 2018); *see also* Tex. Civ. Prac. & Rem. Code Ann.

21

§ 33.003(b) (stating that proportionate-responsibility statute "does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission."); Tex. Civ. Prac. & Rem. Code Ann. § 33.004(l) ("After adequate time for discovery, a party may move to strike the designation of a responsible third party on the ground that there is no evidence that the designated person is responsible for any portion of the claimant's alleged injury or damage. The court shall grant the motion to strike unless a defendant produces sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.").

## 2. Application

Tenaris argues the trial court erred in striking its designation of Milberger as a responsible third party based solely on evidence from appellee Ellisor. In a video taken during Hurricane Harvey, Ellisor exclaimed that storm water coming out of Milberger had always been a problem, and Ellisor additionally described the water reaching his house as "running over the top of the road coming out of Milberger's Grass Farm."

There is no evidence in the record regarding Milberger's duty or standard of care, or whether Milberger's alleged breach of the applicable standard caused appellees' injuries. Ellisor's video only vaguely asserts that Milberger had been a problem in the past and that some water came from the direction of Milberger. This lone piece of evidence from a single appellee constitutes no more than a scintilla of evidence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003(b); *see also In re Coppola*, 535 S.W.3d 506, 508 (Tex. 2017) (concluding trial court may strike responsible third-party designation if there are insufficient facts concerning third party's responsibility). Therefore, we conclude that the trial court did not err in striking Tenaris's motion to designate a responsible third party. *Gunn*, 489 S.W.3d

22

at 99 (concluding in medical malpractice case that defendants were not entitled to comparative responsibility instruction on nurses' alleged negligence even though expert testimony suggested nurses' conduct was problematic).

We overrule issue 5.

### III.  CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/     Charles A. Spain
         Justice

Panel consists of Justices Wise, Bourliot, and Spain.